[No. F026419. Fifth Dist. July 29, 1997.]

In re MERANDA P., a Person Coming Under the Juvenile Court Law.
STANISLAUS COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
NOELINE P., Defendant and Appellant.

[No. F027095. Fifth Dist. July 29, 1997.]

In re NOELINE P. on Habeas Corpus.

COUNSEL

Janet H. Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael H. Krausnick, County Counsel, and Linda S. Macy, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

DIBIASO, Acting P. J.—By appeal and by petition for writ of habeas corpus, Noeline P. (the mother) challenges the order terminating her parental rights (Welf. & Inst. Code, § 366.26) to her daughter, Meranda P.[1] On her appeal and in her petition, the mother contends the termination order was wrongly entered because it was the inevitable product of a collection of erroneous orders—detention, jurisdiction, disposition and review—that preceded it. According to the mother, when the superior court made each of these prior orders she was either wrongly denied counsel or was incompetently represented by appointed counsel. We will conclude the mother is barred from raising, by her appeal, the propriety of the orders antedating the termination order and from collaterally attacking, by her petition for writ of habeas corpus, the termination order or the orders antecedent to it. We will therefore affirm the juvenile court's termination order and deny the mother's habeas corpus petition. We will also decline the mother's request that we treat her appeal as a petition for extraordinary relief.

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise stated.

## I.

In September 1994, the Stanislaus County Superior Court, sitting as the juvenile court, adjudged Meranda, born June 5, 1994, a juvenile dependent under section 361. The mother was unrepresented by counsel at the detention hearing and thereafter throughout the first 12 months of the reunification period; she had informed the court at the initial detention hearing that she did not want counsel.

The mother was a teenager with a history of substance abuse. Both she and Meranda had tested positive for methamphetamine when Meranda was born. At the September 1994 dispositional hearing, the court ordered Meranda removed from parental custody and approved a reunification plan for the child's parents. The reunification plan focused on the mother's substance abuse. It required her to: (1) complete a substance abuse evaluation and follow the recommendations of the counselor; (2) submit to drug testing on a random basis, as required by the substance abuse program; and (3) attend "NA/AA" meetings as required by the substance program. The plan also addressed the mother's need to provide a clean, healthy, and safe home for Meranda; the mother was to cooperate with a teaching homemaker and to attend and successfully complete a parenting program.

Between the dispositional hearing and the six-month review hearing (§ 366.21, subd. (e)), the mother had not maintained contact with her social worker, kept the social worker apprised of her whereabouts, or begun any reunification program. In addition, the mother infrequently visited with Meranda, even though weekly visits were authorized. When she did visit with the child she refused to hold the baby or pay attention to her needs or well-being. The mother did not personally attend the review hearing.

At the six-month review hearing, the juvenile court found that (1) reasonable services had been offered and made available but neither parent had satisfied the reunification plan, and (2) return of Meranda to either of her parents would pose a substantial risk of detriment to the child. The juvenile court therefore continued Meranda's out-of-home placement with her paternal grandparents and the provision of reunification services to the parents.

During the second six-month period, the mother gave birth to another child. While pregnant with this child, the mother appeared for an assessment appointment at the First Step Perinatal Substance Abuse Program. She attended some of the orientation groups offered by the Program, but appeared resistant to services. In April 1995, First Step dismissed the mother from the program because of her spotty attendance and apparent unwillingness to fully participate.

The mother did little else to comply with the reunification plan, and she made no serious effort to establish a parental bond with Meranda. No social worker had any contact with the mother until a few weeks before the 12-month review hearing. The parents' whereabouts had been unknown for the majority of the preceding year. The parents were reported to have said that if Meranda could not be with them, then they would rather she be with the paternal grandparents.

On the day of the 12-month review hearing, the department of social services took Meranda's infant brother into protective custody due to an apparent lack of proper medical care. The department also recommended that the court terminate services with respect to Meranda and refer her case for permanency planning. The mother attended the hearing and asked the court to extend her additional time for reunification and drug rehabilitation.

The court took the matter under submission pending the detention hearing in the dependency proceeding involving the mother's newborn son. At the August 11, 1995, detention hearing in that second proceeding, the mother said she wanted a court-appointed lawyer. The court appointed counsel for the mother in both proceedings. It also ordered another six months of reunification services with respect to Meranda.

During the last six months of reunification, the mother reappeared at the First Step program and attended a few orientation groups between August and early October 1995. According to the program administrators, the mother seemed isolated, withdrawn and unmotivated. She did not participate in the services nor did she appear to have any insight into the consequences of her behavior. The program recommended to a social worker that the mother enter a residential treatment facility for teen substance abusers. The paternal grandmother obtained information for the mother about a nearby center which offered such services, but the mother was not interested in enrolling.

In January 1996, the mother was assessed for the Reality Program, a 28-day in-patient substance abuse program. She failed to qualify, however, because she denied she had a drug or alcohol problem. The mother did nothing else to further reunification. She saw Meranda on approximately 10 occasions after the last court hearing; with the exception of a Christmas visit, the mother usually stayed 10 minutes or less.

At the 18-month review hearing the mother testified she was willing to enter the Reality Program. She understood that before she could be reevaluated for Reality, she would have to attend a series of "NA" (Narcotics

Anonymous) meetings. She said she wanted "a fighting chance" to regain custody of Meranda and appreciated the need to deal with her substance abuse. When asked why she waited so long to accept treatment, the mother blamed: (1) the Reality Program because it would not accept her until she turned 18; (2) her husband because he had not shared with her certain information her mother-in-law had obtained about the residential treatment program for teenagers; and (3) the teacher at First Step who, according to the mother, did not like her.

The court found: (1) the mother had received reasonable services but had made only minimal progress towards reunification; and (2) return of Meranda to parental custody would create a substantial risk of detriment to the child's physical and emotional well-being. The court therefore terminated reunification services and set the matter for a section 366.26 hearing (.26 hearing) in May 1996. The court also gave the mother notice of her right to seek writ review of these orders.

At the .26 hearing, it was undisputed that Meranda was adoptable and that her paternal grandparents wished to adopt her. The mother testified she had occasionally visited with Meranda and expressed her opposition to the selection of a permanent plan of adoption. The mother's counsel urged the court to select guardianship over adoption as the permanent plan, based on the mother's recent efforts to rehabilitate herself.

The court terminated the mother's parental rights to Meranda, finding by clear and convincing evidence that Meranda was adoptable and that the severance of the mother's rights would not be detrimental to the child.

The mother filed a timely notice of appeal in June 1996. On November 1, 1996, the mother filed a petition for writ of habeas corpus.

## II.

### A.

■ Dependency appeals are governed by section 395, which provides in relevant part: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; but no such order or judgment shall be stayed by the appeal, unless, pending the appeal, suitable provision is made for the maintenance, care, and custody of the person alleged or found to come within the provisions of Section 300, and unless the provision is approved by an order of the juvenile court. The

appeal shall have precedence over all other cases in the court to which the appeal is taken."

This statute makes the dispositional order in a dependency proceeding the appealable "judgment." (*In re Eli F.* (1989) 212 Cal.App.3d 228, 233 [260 Cal.Rptr. 453].) Therefore, all subsequent orders are directly appealable without limitation, except for post-1994 orders setting a .26 hearing when the circumstances specified in section 366.26, subdivision (*l*), exist. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 590-591 [50 Cal.Rptr.2d 745]; *Steve J.* v. *Superior Court* (1995) 35 Cal.App.4th 798, 811-812 [41 Cal.Rptr.2d 731].) A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order. (*In re Edward H.*, *supra*, 43 Cal.App.4th at pp. 590-591; *Wanda B.* v. *Superior Court* (1996) 41 Cal.App.4th 1391, 1395-1396 [49 Cal.Rptr.2d 175]; *Steve J.* v. *Superior Court*, *supra*, 35 Cal.App.4th at pp. 810-812; *Karl S.* v. *Superior Court* (1995) 34 Cal.App.4th 1397, 1402-1404 [41 Cal.Rptr.2d 84]; *In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 563 [283 Cal.Rptr. 483]; see also *In re Matthew C.* (1993) 6 Cal.4th 386, 393 [24 Cal.Rptr.2d 765, 862 P.2d 765]; see Code Civ. Proc., § 906.)

B.

The mother contends the entire dependency proceeding for Meranda was defective from its inception. To support this complaint she makes two specific points: (1) she was deprived of her constitutional and statutory[2] rights to counsel at the detention hearing and thereafter until the 18-month review hearing, and (2) she was deprived of her constitutional and

---

[2]Section 317 provides in relevant part:

"(a) When it appears to the court that a parent . . . of the minor desires counsel but is presently financially unable to afford and cannot for that reason employ counsel, the court may appoint counsel as provided in this section.

"(b) When it appears to the court that a parent . . . of the minor is presently financially unable to afford and cannot for that reason employ counsel, and the minor has been placed in out-of-home care, or the petitioning agency is recommending that the minor be placed in out-of-home care, the court shall appoint counsel, unless the court finds that the parent . . . has made a knowing and intelligent waiver of counsel as provided in this section.

". . . . . . . . . . . . . . . . . . . . . . .

"(d) The counsel appointed by the court shall represent the parent, . . . at the detention hearing and at all subsequent proceedings before the juvenile court. Counsel shall continue to represent the parent . . . unless relieved by the court upon the substitution of other counsel or for cause. The representation shall include representing the parent . . . in termination proceedings and in those proceedings relating to the institution or setting aside of a legal guardianship."

statutory[3] rights to the effective assistance of trial counsel at and following the 18-month review hearing. These contentions call into question the propriety of the orders regarding Meranda made at each of the hearings which preceded the .26 hearing. The mother did not file an appeal from any of these appealable orders, and the time within which to do so has long since passed. (Cal. Rules of Court, rule 2.) Nor did the mother petition this court for extraordinary writ review of the order setting the .26 hearing entered at conclusion of the 18-month review hearing. (See § 366.26, subd. (*l*).)

Nevertheless, the mother maintains we are required to address her claims on their merits. She points out what she believes are several valid arguments an appointed counsel could have made at the hearings where she was unrepresented. She also says her appointed counsel was incompetent because he did not question at the 18-month review hearing the sufficiency of the reunification services she received. According to the mother, had any of these arguments been advanced on her behalf one or more of the interim orders would have been in her favor and the termination order would never have been entered. She also asserts her failure to raise her representational claims by means of a timely appeal from the disposition order or from a subsequent interim order was itself the result of the lack or inadequacy of counsel. In the mother's estimation, all "these deprivations and failures tainted the entire termination process" and render her claims about the absence and inadequacy of counsel cognizable on her appeal from the termination order.

### C.

The principle—which for convenience we will identify as the "waiver rule"—that an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order is sound. We decline to carve out an exception to it here even though the issues raised involve the important constitutional and statutory rights to counsel and to the effective assistance of counsel.

### 1.

Enforcing the waiver rule against the mother's representational claims does not infringe her due process rights. ■ Three elements must be assessed in order to determine " 'what due process requires' for fundamental fairness, specifically, 'the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions.' "

[3]Section 317.5 provides in relevant part: "(a) All parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel."

(*In re Sade C.* (1996) 13 Cal.4th 952, 987 [55 Cal.Rptr.2d 771, 920 P.2d 716].) The interplay of these three factors favors application of the waiver rule because, whatever benefits might accrue to the parent in the absence of the rule, the resulting costs to the child and the state are "greater." (*Id.* at p. 992.) Of the many private and public concerns which collide in a dependency proceeding, time is among the most important.[4] (*Id.* at p. 990.) The action " 'must be concluded as rapidly as is consistent with fairness . . . .' " (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 32 [101 S.Ct. 2153, 2162, 68 L.Ed.2d 640]; *In re Sade C.*, *supra*, at p. 990.) The state's interest in expedition and finality is "strong." (*In re Sade C.*, *supra*, at p. 993.) The child's interest in securing a stable, "normal" home "support[s] the state's particular interest in finality." (*In re Sade C.*, *supra*, at p. 993.) To permit a parent to raise issues which go to the validity of a final earlier appealable order would directly undermine these dominant concerns of finality and reasonable expedition.

The present case emphatically proves this thesis. A reversal based upon an error, whatever its nature, that occurred at the detention hearing would require the juvenile court on remand to literally commence the dependency anew, thereby adding at minimum another 14 months to the duration of the proceeding on top of the 20 or so months (excluding the time the case spends in this court) which have elapsed since the detention hearing. (See *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 868 [245 Cal.Rptr. 1, 750 P.2d 778]; *In re Arturo A.* (1992) 8 Cal.App.4th 229, 244 [10 Cal.Rptr.2d 131].) Although appeals from interim appealable orders do themselves introduce delay into a dependency proceeding, the waiver rule nonetheless ensures that a reversal and remand will not compel a repetition of proceedings which occurred earlier than the last final appealable order.

Moreover, the risk that a parent will be erroneously deprived of his or her rights if the waiver rule is applied is diminished by two factors. First, that a parent lacked counsel or had the services of incompetent counsel does not mean the parent was in fact harmed as a consequence. Neither the absence nor the blunder of appointed counsel alone entitles the parent to obtain the

---

[4]The parent has a "liberty interest . . . in the care, custody, and management of" his or her child. (*Santosky* v. *Kramer* (1982) 455 U.S. 745, 753 [102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599]; *In re Sade C.*, *supra*, 13 Cal.4th at p. 987.) The child has a liberty interest in a normal family home with his or her parents if possible or at least in a home that is stable. (*Santosky*, *supra*, at pp. 754, fn. 7, 759 [102 S.Ct. at pp. 1394-1395, 1397-1398]; *In re Sade C.*, *supra*, at p. 988.) The state has a "strong" interest in expedition and finality (*In re Sade C.*, *supra*, at p. 993), an "urgent," "compelling" parens patriae interest in preserving and promoting the welfare of the child (*id.* at p. 989), and a less demanding " 'fiscal and administrative interest in reducing the cost and burden of [the] proceedings' " (*id.* at p. 989). All three parties share an interest in the accurate and just outcome of the case. (*Id.* at p. 989.)

appellate relief he or she seeks. With respect to a parent's assertion of a violation of the statutory right to representation or the statutory right to adequate representation, the parent must also show "it is 'reasonably probable . . . a result more favorable to the appealing party would have been reached in the absence of the error.' " (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1668 [54 Cal.Rptr.2d 722]; *In re Ronald R.* (1995) 37 Cal.App.4th 1186, 1195 [44 Cal.Rptr.2d 22]; *In re Malcolm D.* (1996) 42 Cal.App.4th 904, 919 [50 Cal.Rptr.2d 148].)[5] With respect to a parent's assertion of a violation of the constitutional right to counsel, the parent must also show there was a "determinative difference" in the outcome of the proceeding by reason of the parent's lack of counsel, such that the proceeding was rendered fundamentally unfair to the parent. (*Lassiter* v. *Department of Social Services, supra,* 452 U.S. at pp. 32-33 [101 S.Ct. at p. 2162]; see also *In re Malcolm D., supra,* 42 Cal.App.4th at p. 921; *In re Ronald R., supra,* 37 Cal.App.4th at p. 1196.)[6] With respect to a parent's assertion of a violation of the constitutional right to competent counsel, we have not found any case law on the subject in the dependency context. However, in criminal cases a defendant who claims unconstitutionally inadequate representation must establish, in addition to the reasonable probability of a different outcome, that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." (*Lockhart* v. *Fretwell* (1993) 506 U.S. 364, 372 [113 S.Ct. 838, 844, 122 L.Ed.2d 180]; see also *In re Harris* (1993) 5 Cal.4th 813, 833 [21 Cal.Rptr.2d 373, 855 P.2d 391].) Unreliability or unfairness is demonstrated when the ineffectiveness of counsel deprives the defendant of a substantive or procedural right to which the law entitles him or her. (*Lockhart, supra,* at p. 372 [113 S.Ct. at p. 844].) Because a parent's right to counsel in a dependency is not coextensive with that of a criminal defendant, it is unlikely the United States Supreme Court would apply a more stringent measure of harm in a dependency case.

[5]This can be a perplexing, sometimes insoluble, issue in a dependency. (See *In re Arturo A., supra,* 8 Cal.App.4th 229, 244-245; *In re Issac J.* (1992) 4 Cal.App.4th 525, 534 [6 Cal.Rptr.2d 65]; see also *In re Daniel D.* (1994) 24 Cal.App.4th 1823, 1835, fn. 15 [30 Cal.Rptr.2d 245].)

[6]An indigent parent in a state-initiated dependency, which is civil in nature, has no general right under either the federal or the state Constitution to the assistance of appointed trial counsel at every stage of the proceeding. (*Lassiter* v. *Department of Social Services, supra,* 452 U.S. at pp. 31-32 [101 S.Ct. at p. 2162]; *In re Sade C., supra,* 13 Cal.4th at pp. 986-987.) The appointment of counsel is a constitutional imperative only when, in the estimation of "the court in which the matter is pending subject to appellate review," fundamental fairness requires such appointment. (*In re Sade C., supra,* at pp. 986-987.) Whether fundamental fairness is likely to be a hazard is determined by weighing, one against the others, the same three considerations we have taken into account in assessing whether the waiver rule violates due process: (1) the private interests at stake; (2) the government's interest; and (3) the risk that the procedures used will lead to erroneous decisions. (*Lassiter, supra,* at p. 27 [101 S.Ct. at pp. 2159-2160]; *In re Sade C., supra,* at p. 987.) The inquiry necessitates consideration of the factual circumstances and the procedural setting of the case at the time when the error is said to have occurred. (See *Lassiter, supra,* at pp. 32-33 [101 S.Ct. at p. 2162].)

Second, we recognize that "[a] parent who is unable to present an adequate defense from the outset may be seriously disadvantaged later." (*In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1707 [12 Cal.Rptr.2d 294]; see *Lassiter* v. *Department of Social Services, supra*, 452 U.S. at pp. 30-31 [101 S.Ct. at p. 2161].) Nevertheless, there are significant safeguards built into this state's dependency statutes which tend to work against the wrongful termination of a parent's right to a child even though a parent may be unrepresented or poorly represented. The dependency scheme is a "remarkable system of checks and balances" (*In re Andrew B.* (1995) 40 Cal.App.4th 825, 865 [47 Cal.Rptr.2d 604]) designed to "preserve the parent-child relationship and to reduce the risk of erroneous fact-finding in . . . many different ways . . . ." (*Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242, 255 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) Until permanency planning, the parent's interest in having a child returned to the parent is the paramount concern of the law. (*Id.* at pp. 255-256; §§ 366.21, subds. (e) & (f), 366.22, subd. (a).) The parent is thus entitled to 12 months, and possibly 6 more months, of reunification services aimed at assisting the parent in overcoming the problems that led to the child's removal. (§§ 361.5, subd. (a), 366.21, subds. (e) & (f).) There is also in force at the dispositional hearing and at all subsequent prepermanency planning hearings a statutory presumption that the child will be returned to parental custody. (§§ 366.21, subds. (e) & (f), 366.22, subd. (a).)

In addition, there are "precise and demanding substantive and procedural requirements" which the petitioning agency must fulfill before it can propose termination. At the dispositional hearing, the agency must show by the enhanced standard of clear and convincing evidence that removal of the child is necessary. (§ 361, subd. (b).) At the interim review hearings, the agency has the burden of showing by a preponderance of evidence that the return of the child to the parent would be detrimental to the child and that reasonable reunification services have been provided. (§§ 366.21, subds. (e) & (f), 366.22, subd. (a).) Before reunification can be terminated, the agency must establish by a preponderance of evidence that it would be detrimental to return child to the parent. (§§ 366.21, subd. (f), 366.22, subd. (a).)

Also, independent judicial review of the case is mandated at least every six months during the reunification period and a myriad of positive findings are required with respect to every critical pre-permanency planning decision. (§§ 366.21, 366.22.) "The number and quality of the judicial findings that are necessary preconditions to termination convey very powerfully to the fact finder the subjective certainty about parental unfitness and detriment required before the court may even consider ending the relationship between natural parent and child." (*Cynthia D.* v. *Superior Court, supra*, 5 Cal.4th at pp. 255-256.)

Last, the relevant statutes provide for early and complete notification to the parent of every stage of the proceedings during the entire course of the dependency. The agency must demonstrate its due diligence at the outset when a parent cannot be found. (§§ 311, subd. (a), 361.5, subd. (b)(1).) When a parent is located:

"The child dependency statutory scheme requires parents be notified of all proceedings involving the child. (§ 302, subd. (b).) When a social worker, police officer or probation officer takes a child into protective custody, that person must immediately inform the parent and provide a written statement which explains the parent's procedural rights and the preliminary stages of the dependency investigation and hearing. (§ 307.4, subd. (a).)

"The parent must also be notified of the detention hearing and given a copy of the dependency petition 'if the whereabouts of each parent . . . can be ascertained by due diligence . . . .' (§ 311, subd. (a).) If it appears the parent cannot read, notice may be given orally. (§ 311, subd. (a).) The parent must be informed of the conditions under which the child will be released, the hearings which may be required, *the right to counsel*, the privilege against self-incrimination and *appeal rights*. (§ 307.4, subd. (a).) The parent must also be notified of each review hearing by mail or personal service. (§ 366.21.)" (*In re Raymond R.* (1994) 26 Cal.App.4th 436, 440 [31 Cal.Rptr.2d 551], italics added.)

Notification to the parent must also be given about the time and place of the .26 hearing and of the right to have counsel at such proceeding. (§ 366.23.)

By referring to these statutes we do not mean to trivialize or understate in the slightest the critical role in ensuring an accurate and just decision played by a capable appointed counsel for the parent. (See *In re Emilye A., supra*, 9 Cal.App.4th at pp. 1709-1710.) We fully recognize that an error unfavorable to the interests of the parent during the course of a dependency may be "irremediable." (*In re Sade C., supra*, 13 Cal.4th at p. 990.) We mention the statutory provisions simply to point out that the legitimate interests of an unrepresented or incompetently represented parent are protected to some— perhaps very limited—extent by those provisions of the dependency laws which "constrain judicial discretion [and] diminish the risk of erroneous findings of parental inadequacy and detriment to the child . . . ." (*Cynthia D.* v. *Superior Court, supra*, 5 Cal.4th at p. 256.)

2.

In addition to finding no due process violation, we believe there are other important reasons for enforcing the waiver rule against the mother's

representational claims. First and foremost, as we explained above, disregarding the rule would subvert the predominant interests of the child and the state in finality and reasonable expedition. (See *In re Sade C.*, *supra*, 13 Cal.4th at p. 993; *Adoption of Alexander S.*, *supra*, 44 Cal.App.3d at p. 868.)

Next, authorizing parents to attack final appealable orders by means of an appeal from a subsequent appealable order would sabotage the apparent legislative intention to expedite dependency cases and subordinate, to the extent consistent with fundamental fairness, the parent's right of appeal to the interests of the child and the state.[7] (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) The Legislature has made known its desire not to allow the child's future to be held hostage to a postponed appeal. First, it has enacted section 395, which affords a parent the opportunity to obtain immediate appellate review of each of the several crucial orders entered in a dependency. Second, the Legislature has not acted to counter those cases which have applied the waiver rule to dependency cases. Third, the Legislature did not wait long before it statutorily annulled the Supreme Court's holding in *In re Matthew C.*, *supra*, 6 Cal.4th 386, 388, that "findings subsumed within [an order setting a .26 hearing] are reviewable on appeal from the final order terminating . . . parental rights." (See § 366.26, subd. (*l*), enacted in 1994 and made applicable to orders issued on or after Jan. 1, 1995; Cal. Rules of Court, rule 39.1B(2).)[8]

Finally, failing to apply the waiver rule would insert an element of illogic into the law and subvert the Legislature's intent, evident in section 366.26,

---

[7]There is no constitutional right to an appeal; the state may therefore "restrict, change, withhold or even abolish" it (*In re Taya C.* (1991) 2 Cal.App.4th 1, 7 [2 Cal.Rptr.2d 810]), subject of course to the constraints of the due process and equal protection clauses of the Fourteenth Amendment (*In re Sade C.*, *supra*, 13 Cal.4th at pp. 966-968).

[8]In pertinent part, section 366.26, subdivision (*l*), provides: "(1) An order by the court that a hearing pursuant to this section be held is not appealable at any time unless all of the following applies:

"(A) A petition for extraordinary writ review was filed in a timely manner.

"(B) The petition substantively addressed the specific issues to be challenged and supported that challenge by an adequate record.

"(C) The petition for extraordinary writ review was summarily denied or otherwise not decided on the merits.

"(2) Failure to file a petition for extraordinary writ review within the period specified by rule, to substantively address the specific issues challenged, or to support that challenge by an adequate record shall preclude subsequent review by appeal of the findings and orders made pursuant to this section."

California Rules of Court, rule 39.1B, which implements section 366.26, subdivision (*l*), prescribes numerous, successive time limits for completing the steps involved in the writ process. The purpose of these constraints is to enable the reviewing court to expeditiously evaluate the propriety of the findings and orders made by the juvenile court in setting a .26 hearing before that hearing takes place. (*Karl S.* v. *Superior Court*, *supra*, 34 Cal.App.4th 1397, 1402-1403.)

subdivision (*l*), to restrict appeals challenging orders setting a .26 hearing. (Cf. *In re Arturo A., supra,* 8 Cal.App.4th at p. 242.) The dispositional order and the several postdispositional review orders collectively provide justification for an order setting the .26 hearing (§§ 366.21, 366.22), which in turn furnishes grounds for a termination order (§ 366.26, subd. (c)(1)). Upsetting any one of these foundational orders on an appeal from the termination order by a parent who has neglected to bring a petition for extraordinary writ review of the order setting the .26 hearing would necessarily invalidate the order setting such hearing, a result which would seem to defeat the Legislature's express command that the order setting the .26 hearing be unimpeachable by appeal "at any time" in the absence of all of the conditions listed in section 366.26, subdivision (*l*)(1).

## D.

Our conclusion that the waiver rule should apply to the instant appeal is conceptually consistent with other cases which have held that claims relating to the right to, or the inadequacy of, parental counsel may be surrendered by inaction. Thus, courts have ruled that: (1) the statutory right to counsel (§ 317, fn. 2, *ante*) imposes no duty upon the juvenile court to appoint counsel for an indigent parent when that parent has not made any request for counsel (*In re Ebony W.* (1996) 47 Cal.App.4th 1643, 1645 [55 Cal.Rptr.2d 337]); (2) a parent's appearance and participation in a dependency hearing without raising the court's failure to appoint counsel at an earlier hearing waives the claim on appeal from the order entered at the later hearing (*In re Gilberto M.* (1992) 6 Cal.App.4th 1194, 1200 [8 Cal.Rptr.2d 285]); and (3) the juvenile court may, on notice, relieve counsel previously appointed for a parent when the facts before the court demonstrate the parent does not "desire" further legal representation (*Janet O.* v. *Superior Court* (1996) 42 Cal.App.4th 1058, 1065-1066 [50 Cal.Rptr.2d 57]).[9] It has also been said that "untimeliness [in bringing a petition for writ relief] may . . . preclude

---

[9]*In re Laura H.* (1992) 8 Cal.App.4th 1689, 1695-1696 [11 Cal.Rptr.2d 285], appears to be at odds with these three cases. The court in *Laura H.* held in part that mere acquiescence does not constitute a waiver of the right to counsel; such a waiver must be knowing and intelligent. (*Id.* at p. 1695.) In addition, *Laura H.* remarked that the purpose of the statute there in issue, § 366.26, subdivision (g), was to protect the parent's constitutional right to confrontation. (8 Cal.App.4th at pp. 1694-1695.) However, a dependency proceeding is civil, not criminal, in nature. Thus, a parent in a dependency is not "entitled to full confrontation and cross-examination . . . and [is] not favored through the standard of proof beyond a reasonable doubt." (*In re Sade C., supra,* 13 Cal.4th at pp. 991-992.) "Criminal defendants and parents are *not* similarly situated. By definition, criminal defendants face punishment. Parents do not." (*In re Sade C., supra,* at p. 991.) The objective of a civil proceeding to terminate parental rights is not to "prosecute and punish the indigent parent but to protect the child." (*In re Benjamin E.* (1996) 44 Cal.App.4th 71, 75 [51 Cal.Rptr.2d 584].) The *Laura H.* court also applied the "harmless beyond a reasonable doubt" standard of *Chapman* v. *California* (1967)

review of claims of ineffective assistance of counsel." (*In re Kristin H.*, *supra*, 46 Cal.App.4th at p. 1667.)

In this case, the mother neither asked for counsel nor expressed any discontent with appointed counsel in the juvenile court; in fact, at the detention hearing she said she did not want a lawyer.[10] She then squandered four different opportunities to complain to this court about any representational problems she believed she had. She could have appealed from the disposition order, the six-month review order, and the twelve-month review order. (§ 395; *Steve J.* v. *Superior Court, supra*, 35 Cal.App.4th at p. 812.) She could have challenged the order setting a permanency planning hearing by petition for extraordinary writ (Cal. Rules of Court, rule 39.1B). At the outset the court informed her of her right to counsel and her right of appeal. At the appropriate time it apprised the mother of her right to seek writ relief from the order setting the .26 hearing.

Even if she could not articulate a legal issue such as right to counsel or ineffective assistance, she obviously knew that she did not have custody of Meranda. If she felt the loss of custody was improper for whatever reason, she had ample opportunity to express her concerns. Nonetheless, she made not the slightest effort to inform the social worker or the juvenile court that she wanted counsel, was unhappy with counsel at or after the 18-month review hearing, or disputed or was unsatisfied with, and desired appellate review of, any order entered prior to the termination order. Instead, she chose to remain silent throughout the juvenile court proceedings.

### E.

Neither of the cases relied upon by the mother, *In re Diana G.* (1992) 10 Cal.App.4th 1468, 1479-1480 [13 Cal.Rptr.2d 645] and *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1404 [22 Cal.Rptr.2d 50], is of help to her. *Diana G.* was an appeal from an order terminating a father's rights under section 366.26. He complained in part that he had been denied effective legal assistance during the first 10 months of the dependency proceedings. The appellate court assumed, without deciding, the issue was cognizable on appeal, citing *Lassiter* v. *Department of Social Services, supra*, 452 U.S. 18, 24-31 [101 S.Ct. 2153, 2158-2161]. Although the *Diana G.* court acknowledged the father's contention arguably was not reviewable by virtue of former section 366.26, subdivision (k) (*Diana G., supra*, 10 Cal.App.4th at p. 1479), the court nevertheless addressed the substance of the claim.

---

386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065], even though the criminal reasonable doubt standard of persuasion does not apply at any stage of a dependency proceeding. (*In re Laura H., supra*, 8 Cal.App.4th at pp. 1695-1696.) *Lassiter* is not mentioned in *Laura H.*

[10]In her second child's case, the mother did request appointment of counsel.

We regard *Diana G.* as a case where the court reached the merits of the argument concerning inadequate counsel simply for purposes of efficiency. There were other issues properly before the court on the appeal from the termination order. Also, when *Diana G.* was published in November 1992, the state Supreme Court had granted review in *In re Matthew C.* (Cal.App.) to decide if then section 366.26, subdivision (k), precluded, on appeal from a termination order, the review of issues decided when the juvenile court set the .26 hearing.[11] (See *In re Matthew C., supra,* 6 Cal.4th 386.)

*Lassiter,* relied upon in *Diana G.* and mentioned often by us in this opinion, had nothing to do with whether otherwise final appealable dependency orders may be challenged by way of an appeal from a termination order when the issues raised with respect to those final earlier orders entail claims of ineffective assistance or denial of counsel. Although *Lassiter* v. *Department of Social Services, supra,* 452 U.S. at pages 20-24 [101 S.Ct. at pages 2156-2158], concerned an appeal from an order terminating a mother's rights, the sole issue decided by the Supreme Court was whether due process entitled an indigent mother to the assistance of counsel at the termination hearing. (*Id.* at pp. 20-24 [101 S.Ct. at pp. 2156-2158].)

In *Brittany S.,* the appellate court ruled that a parent's failure to seek writ relief under former section 366.26, subdivision (k), from an order setting a .26 hearing did not preclude review, by an appeal from the subsequent termination order, of a finding, essential to the order setting the .26 hearing, that the parent received adequate reunification services. (*In re Brittany S., supra,* 17 Cal.App.4th at p. 1405.) In reaching this conclusion the court reasoned that because by express statutory command (then § 366.26, subd. (k)) the order setting the .26 hearing was not an appealable order, Code of Civil Procedure section 906 applied and authorized the appellate court to review " 'any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party.' " (*Brittany S., supra,* 17 Cal.App.4th at p. 1404, italics omitted, quoting Code Civ. Proc., § 906.) The Supreme Court later came to the same conclusion. (*In re Matthew C., supra,* 6 Cal.4th at p. 401.) As we pointed out earlier, the holding in *Matthew C.* was legislatively abrogated in 1994. (See § 366.26, subd. (*l*); *In re Edward H., supra,* 43 Cal.App.4th at pp. 590-591.)

F.

All the reasons we have given persuade us not to put aside the waiver rule when the parent, on appeal from a termination order, raises representational

---

[11]Former section 366.26, subdivision (k), provided:

"An order by the court directing that a hearing pursuant to this section be held is not an appealable order, but may be the subject of review by extraordinary writ."

issues with respect to an earlier final appealable order. We therefore will not inquire into the propriety of the findings made or orders issued by the juvenile court at the detention, jurisdictional, dispositional, 6-month, 12-month and 18-month hearings, even though the mother may have been unrepresented or may have received inadequate legal assistance at the 18-month review hearing or thereafter. In the last analysis, at some point the interests of a parent, and therefore the correction of purported error which operates to the detriment of the parent, must give way to the interest of the child in a stable, secure, long-term, continuous home environment. Under California's dependency statutes, this moment arrives when the juvenile court terminates reunification and sets a permanency planning hearing. (*In re Sade C., supra*, 13 Cal.4th at p. 993; *In re Marilyn H., supra*, 5 Cal.4th at p. 309.) At this juncture, the balance of the competing interests is tipped well towards the child; it is presumed the interests of the child and the natural parents have diverged and are inconsistent. (*Santosky v. Kramer, supra*, 455 U.S. at p. 760 [102 S.Ct. at p. 1398]; *In re Sade C., supra*, at p. 989; *In re Marilyn H., supra*, 5 Cal.4th at p. 309.) Therefore, if a parent, for whatever reason, has failed to timely and appropriately raise a claim about the existence or quality of counsel received at a proceeding antedating the .26 hearing, we will apply the waiver rule to foreclose the parent from raising such an objection on appeal from the termination order. We leave for another day the question whether we would apply the waiver rule when a final appealable order is challenged on representational grounds by an appeal taken from a subsequent interim order, such as a review order, or by a petition for extraordinary relief under section 366.26, subdivision (*l*), after entry of an order setting a .26 hearing.

Because the mother's appeal from the termination order does not present any issue concerning the validity of the juvenile court's findings of adoptability and lack of detriment made at the .26 hearing, we will affirm the order terminating the mother's parental rights.

### III.

### A.

■ Perhaps because she apprehends the impact of the waiver rule on her appeal, the mother collaterally attacks the termination order by means of her petition for writ of habeas corpus, which is supported by several declarations. In her petition she advances the same claims of lack of counsel and ineffective assistance of counsel that she raised in her briefs on her appeal from the termination order. Leaving nothing to chance, the mother also asks us to treat her appeal, if we find it defective, as a petition for writ of mandate

(see *In re Paul E.* (1995) 39 Cal.App.4th 996, 1000 [46 Cal.Rptr.2d 289] [mandamus review of a dispositional order would be granted if appeal from order not viable]).

### B.

We will not issue an order to show cause on the mother's habeas corpus petition. First, the Legislature has expressly prohibited the collateral dispute of a termination order. Section 366.26, subdivision (i), reads in full: "Any order of the court permanently terminating parental rights under this section shall be conclusive and binding upon the minor person, upon the parent or parents and upon all other persons who have been served with citation by publication or otherwise as provided in this chapter. After making such an order, the court shall have no power to set aside, change, or modify it, but nothing in this section shall be construed to limit the right to appeal the order."[12]

This statute forbids alteration or revocation of an order terminating parental rights except by means of a direct appeal from the order. (See *In re Ronald V.* (1993) 13 Cal.App.4th 1803, 1806 [17 Cal.Rptr.2d 334].) What we said in connection with the mother's appeal is also true here: Issuance of a writ directing the trial court to vacate the termination order would nullify the Legislature's unambiguous withdrawal of jurisdiction from the court to "set aside, change, or modify" such an order except by means of a direct appeal from that order.

Second, there is the rule of law, reaffirmed by the Supreme Court less than a decade ago, that "habeas corpus may not be used to collaterally attack a final nonmodifiable judgment in an adoption-related action where the trial court had jurisdiction to render the final judgment." (*Adoption of Alexander S., supra,* 44 Cal.3d at pp. 867-868.)[13] In *Alexander S., supra,* 44 Cal.3d 857, the trial court denied a natural mother's petition to withdraw her consent to the adoption of her minor child. The mother did not appeal from the resulting judgment; she instead petitioned for an order establishing the alleged natural father's paternity and then appealed from the denial of that petition. (*Id.* at pp. 862-863.) On her appeal, the mother raised claims which, if sustained, would have required the setting aside of the order refusing her application to withdraw her adoption consent. The Court of Appeal treated the mother's appeal as a petition for writ of habeas corpus and issued the writ, on the ground the mother had been denied the effective assistance of counsel in connection with her attempt to revoke the consent. (*Id.* at p. 863.)

---

[12]Prior to 1994, this language appeared in subdivision (h) of section 366.26.

[13]By contrast, habeas corpus has been found to be available to question a modifiable child custody order. (*In re Wren* (1957) 48 Cal.2d 159, 163 [308 P.2d 329].)

The Supreme Court reversed and discredited the appellate court's "creative use of habeas corpus." (*Adoption of Alexander S.*, *supra*, 44 Cal.3d at p. 864.) The Supreme Court traced the historical development of the principle forbidding the use of habeas corpus as a means of securing review of a nonmodifiable judgment in an adoption-related matter, citing among other authorities *Ex parte Miller* (1895) 109 Cal. 643 [42 P. 428].[14] (*Alexander S.*, *supra*, 44 Cal.3d at pp. 866-867.) The court also rested its decision upon what it found to be sound public policy: "Protracted litigation over the custody of a child may harm the child. For this reason, among others, the United States Supreme Court held that federal habeas corpus could not be used to litigate constitutional claims in child custody matters, observing that '[t]he State's interest in finality is unusually strong in child-custody disputes. The grant of federal habeas would prolong uncertainty for children . . . . It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged.' (*Lehman* v. *Lycoming County Children's Services* (1982) 458 U.S. 502, 513-514 [102 S.Ct. 3231, 3238-3239, 73 L.Ed.2d 928].)" (*Alexander S.*, *supra*, 44 Cal.3d at p. 868.)

We find *Alexander S.* controlling here. The termination order is now a final, statutorily (§ 366.26, subd. (i)) nonmodifiable order, issued by a court with subject matter jurisdiction over the cause finding Meranda adoptable, terminating the mother's rights and freeing the child for adoption by a third person. In our view, the order, and the .26 hearing from which it came, were "adoption-related."

Another appellate court in this state has applied *Alexander S.* in a situation equivalent to the one now before us. In *In re Issac J.*, *supra*, 4 Cal.App.4th 525, the Court of Appeal dismissed an untimely appeal by a parent from an order issued pursuant to former Civil Code section 232 involuntarily terminating the parent's rights to the minor. The parent then filed a habeas corpus petition, asserting he had received ineffective assistance from his trial counsel. (4 Cal.App.4th at pp. 528-529.) The *Issac J.* court followed *Alexander S.* and held in relevant part that habeas could not be employed to

---

[14] In *Ex parte Miller*, *supra*, 109 Cal. 643, the trial court appointed a guardian for a minor. The appointment was an appealable judgment, but the parents failed to file a notice of appeal and the judgment became final. To attempt to gain custody of the child, the parents filed a petition for writ of habeas corpus in which they presented their case for revoking the then final judgment appointing the guardian. The Supreme Court held habeas corpus was available for such a purpose only where the superior court lacked subject matter jurisdiction to enter the judgment. (*Id.* at p. 646.) Because the trial court had such jurisdiction in the circumstances before it, the Supreme Court declined to consider the parents' petition.

obtain collateral relief from the former Civil Code section 232 termination order. (*Issac J., supra*, 4 Cal.App.4th at p. 534.)

Third, the rationale which supports our holding that the waiver rule should be enforced on the mother's appeal from the termination order applies equally to the mother's habeas corpus petition. The now paramount interests of the child in a stable, secure, long-term, continuous home environment and the associated interest of the state in reasonable expedition and finality, which have overcome the parent's interests in maintaining the family relationship, would be no less subject to subversion by a habeas petition than they would be by a direct appeal. In fact, an attack on a termination order by a habeas petition carries the potential for considerably greater damage to the interests of the child and the state because the time for filing of such a petition is not strictly constrained in the same manner as is the filing of an appeal.

## C.

The mother makes a number of other arguments to support the writ relief she seeks. None are convincing.

The mother takes the position *Alexander S.* does not apply because it arose out of a parent's voluntary relinquishment of the minor and not, as here, out of an involuntary deprivation of custody brought about at the instigation of the state. We do not see anything in *Alexander S.* which restricts its application to voluntary surrenders of dependent children or which intimates the Supreme Court rested its holding upon the particularities of the relinquishment statutes then in effect. (*Adoption of Alexander S., supra*, 44 Cal.3d at pp. 866-868.) Instead, the court determined habeas corpus was not available in all situations " '[w]here a parent seeks custody of a child living with another.' "[15] (44 Cal.3d at p. 866.) It also relied upon, as we have pointed out, *Ex parte Miller, supra*, 109 Cal. 643, which involved efforts by the

---

[15]The court in *Alexander S.* identified "six separate subcategories [of child custody cases] where habeas corpus has been allowed. First, it may be used to enforce an existing right to physical custody established by prior order. (*In re Richard M.* (1975) 14 Cal.3d 783, 789 [122 Cal.Rptr. 531, 537 P.2d 363]; *In re Barr* (1952) 39 Cal.2d 25, 27 [243 P.2d 787]; 36 Cal.Jur.3d, Habeas Corpus, § 17, p. 37.) Second, habeas corpus may be brought to determine physical custody in the first instance where no previous custody order has issued, i.e., where habeas corpus is not brought as a collateral attack. (*In re Croze* (1956) 145 Cal.App.2d 492, 495 [302 P.2d 595].) Third, habeas corpus is available to modify a modifiable order. (*In re Wren*[, *supra*, ] 48 Cal.2d [at p.] 163. . . .) Fourth, a parent may bring a habeas corpus action to protect a child from imminent danger. (*In re Dowell* (1935) 4 Cal.App.2d 688, 689 [41 P.2d 596].) Fifth, there is authority allowing a natural parent lacking physical custody to bring an original action in habeas corpus where his or her consent to an adoption was required but not obtained. (*In re Reyna* (1976) 55 Cal.App.3d 288 [(126 Cal.Rptr. 138)].) Finally, habeas

parents of a minor to undo the appointment of a guardian for the child. Most importantly, the court's articulation of the "sound public policy" which underlies its decision is a quotation taken from the United States Supreme Court's opinion in *Lehman* v. *Lycoming County Children's Services* (1982) 458 U.S. 502 [102 S.Ct. 3231, 73 L.Ed.2d 928], where the court rejected a collateral attack under the federal habeas statute on an order involuntarily terminating parental rights.

The mother next contends the use of a habeas corpus petition to raise representational issues has been approved, citing *In re Kristin H.*, *supra*, 46 Cal.App.4th 1635 and *In re Emilye A.*, *supra*, 9 Cal.App.4th 1695. Although these two cases did sanction habeas corpus as a legitimate means of asserting ineffective assistance of counsel claims in a dependency, in both instances the petitions were filed shortly after entry of dispositional orders (§ 358) by the juvenile courts. (*In re Kristin H.*, *supra*, 46 Cal.App.4th at pp. 1649, 1658; *In re Emilye A.*, *supra*, 9 Cal.App.4th at p. 1700.) At this early stage of a dependency, the parent, the child and the state share a common interest in preserving the family relationship, which is presumed to be in the child's best interests (§ 202; *In re David H.* (1995) 33 Cal.App.4th 368, 384 [39 Cal.Rptr.2d 313]), unless unique circumstances dictate otherwise (see § 361.5, subd. (b)). However, by the time a termination order is entered the " 'interests of the child and parent collide, and . . . the child's interest in finality prevails.' [Citations.]" (*In re Kristin H.*, *supra*, 46 Cal.App.4th at p. 1664; see *Cynthia D.* v. *Superior Court*, *supra*, 5 Cal.4th at p. 254.)

Failing also is the mother's argument that overturning the termination order would be in Meranda's best interest because the mother is now capable of providing adequate care for Meranda's younger brother. This contention proves the worth of section 366.26, subdivision (i), and the rule of *Alexander S.*; to agree with the mother would authorize the upsetting of termination orders—and in some instances subsequent adoptions—weeks, months and perhaps even years after the fact. Neither the child nor the law can wait for a parent to decide, at leisure, when he or she will accept in full the responsibilities of parenthood. (*Cynthia D.* v. *Superior Court*, *supra*, 5 Cal.4th at p. 254.)

We additionally do not agree with the mother, or with the opinion in *Mauro B.* v. *Superior Court* (1991) 230 Cal.App.3d 949, 954-955 [281 Cal.Rptr. 507], that *Alexander S.* permits a petition for extraordinary relief to be brought after the time for appeal from a nonmodifiable adoption-related order has expired if there exist "special circumstances" which excuse the

corpus may be brought to collaterally attack a prior order where the court issuing the prior order lacked jurisdiction. (*In re Barr*, *supra*, 39 Cal.2d at 28; 36 Cal.Jur.3d, Habeas Corpus, § 17, p. 36.)" (*Alexander S.*, *supra*, 44 Cal.3d at pp. 866-867.)

failure to appeal, such as a violation of the constitutional right to counsel. (*Id.* at p. 954-955.) We cannot find anything in *Alexander S.* which justifies this reading of the Supreme Court's opinion. *Alexander S.* articulated an unqualified "bright line" rule prohibiting the use of habeas corpus to challenge final, nonmodifiable adoption-related orders.

The basis for the mother's contention and *Mauro*'s holding derives from the Supreme Court's explanation in *Alexander S.* of the many procedural flaws it had found in the Court of Appeal opinion under review. As a part of this exposition the *Alexander S.* court said that in the absence of some special circumstances " 'constituting an excuse for failure to employ [the appellate] remedy,' " such as a claim of ineffective assistance of counsel, " 'the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment.' " (*Adoption of Alexander S., supra,* 44 Cal.3d at p. 865.) However, the Supreme Court was referring to a principle which prevails only in criminal actions. The court also later explicitly set such actions apart from adoption-related proceedings: "It is important to distinguish habeas corpus relief in a criminal case, where the defendant has been unlawfully deprived of his or her libery, from the appropriateness of habeas corpus in adoption cases. As we shall explain, there are compelling reasons for prohibiting a collateral attack by habeas corpus in an adoption case where such an attack would only result in additional delay, uncertainty and potential harm to the prospective adoptee." (*Alexander S., supra,* 44 Cal.3d at p. 866.)

The mother further maintains (1) the order terminating her rights is neither final nor unmodifiable because she filed a timely notice of appeal, and (2) all dependency orders, by reason of the provisions of section 388, are modifiable until an adoption actually occurs.[16] First, there is neither authority nor reason to allow a parent to file what is nothing more than a bogus appeal

---

[16]Section 388 provides:

"Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction.

"If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to such persons and by such means as prescribed by Section 386, and, in such instances as the means of giving notice is not prescribed by such sections, then by such means as the court prescribes."

from a termination order in order to preserve the right to present a habeas corpus petition challenging the order. Second, the availability of section 388 to a parent to secure a change in a dependency order is limited by section 366.26, subdivision (i), which prohibits modification of an order terminating parental rights except by a direct appeal. (*In re Ronald V., supra,* 13 Cal.App.4th at p. 1806.)

Last, the mother's attempt to distinguish her situation from that of the parent in *Alexander S.* is ineffectual. She claims reunification would be the likely result in this case and not the "additional delay, uncertainty and potential harm to the prospective adoptee" of concern to the Supreme Court in *Alexander S.* However, the record provides no such assurance. Instead, the record reflects Meranda has had virtually no contact with the mother since the child was two months old and she does not know the mother as her birth mother.[17]

## DISPOSITION

The order terminating the mother's parental rights to Meranda is affirmed. The request to treat the appeal as a petition for extraordinary relief is denied. The petition for writ of habeas corpus is denied.

Vartabedian, J., and Buckley, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 1997.

---

[17]The mother also maintains the department has conceded in its briefing that habeas corpus relief is appropriate. We find no such concession, but even if one existed we would not accept it.