Filed 1/30/15  In re Alexis D. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ALEXIS D., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU, Plaintiff and Respondent, v. N.D., Defendant and Appellant. | A140975 (Contra Costa County Super. Ct. No. J12-00904) |

N.D. (mother) appeals a juvenile court order terminating her parental rights and placing her daughter Alexis D. for adoption. (Welf. & Inst. Code, § 366.26.)[1] Mother claims a prior order of the juvenile court improperly terminated her family reunification services without a determination that return of the child to her custody would be detrimental to the child's well-being, and the lack of a detriment finding invalidates the later termination of parental rights. We shall reject the claims and affirm the order.

---

[1] All further section references are to the Welfare and Institutions Code.

1

## Statement of Facts[2]

Mother has an extensive history with child protective services and the criminal justice system arising from drug addiction. The dependency petition at issue here was filed by the Contra Costa County Children & Family Services Bureau (bureau) in June 2012, shortly after mother gave birth to Alexis. The child was born in a garage and, when transferred to a hospital, tested positive for methamphetamine. Mother also tested positive for methamphetamine and admitted to using the drug throughout her pregnancy. A petition was filed as to both Alexis and an older sister, Jordan, who was then almost three years old and had been living with her maternal grandmother since August 2011.

The jurisdictional hearing was held on June 19, 2012. Mother was provided notice but did not attend. The court sustained allegations that mother was unable to provide care for the children due to mother's "longstanding substance abuse of methamphetamine" and had made no provision for Jordan's support since August 2011. (§ 300, subds. (b), (g).) The next day, the bureau discovered the maternal grandmother had a conviction for substance abuse. The children were removed from the grandmother's care and placed together in a foster home. Mother contacted the bureau in late June 2012 and, shortly thereafter, was referred to legal counsel. Mother appeared with counsel at a July 12 hearing.

Mother was jailed on auto theft charges but released from custody shortly before the August 23, 2012 disposition hearing. The court granted mother reunification services and twice-monthly supervised visitation. The case plan required mother to remain drug-free and to complete substance abuse, counseling, and parenting programs. Jordan's presumed father, who had prior drug convictions, could not be located. Alexis's alleged father had recently been released from jail and was undergoing paternity testing. No services were provided for him until paternity could be established.

---

[2] The facts are essentially the same as those stated in an earlier opinion in which we affirmed an order terminating mother's parental rights to another child. (*In re Jordan D.* (June 3, 2014, A139927) [nonpub. opn.].)

The six-month review hearing occurred on February 7, 2013. The bureau filed a report recommending continued reunification services to mother. The bureau said mother was "working her case plan." Mother tested negative for drugs on multiple occasions from September 2012 through January 2013 and missed only two tests. She enrolled in a residential substance abuse treatment program in October 2012, where she was receiving counseling and parenting education.

The bureau reported that mother had some departures from the case plan. Mother allowed the maternal grandmother to drive her to one of mother's visits with the children, despite a court order preventing the grandmother's contact with the children. Mother was also "behaving negatively" and "rude[ly]" in recent therapy sessions and, in January 2013, asked to leave the program and join another. A social worker convinced mother to remain in the program.

At the hearing, the bureau's counsel said it was "a close case" as to whether reunification services should be extended. The children's counsel expressed "concern" as to whether there was a substantial probability that the children could be returned to mother at the end of an additional six months of services. The court also expressed concern on that point and continued the review hearing for two months to gauge mother's progress.

The bureau recommended termination of reunification services when the review hearing resumed in April 2013. Mother had dropped out of the residential rehabilitation program in March 2013, one month before completion. A program counselor said mother "played games and did not take the program seriously." A contested hearing was set for later in the month.

At the contested review hearing, mother testified that she had been clean and sober for 10 months, was receiving outpatient counseling, and had recently enrolled in a year-long residential program for abused women. Mother asked the court to "give me time to work on myself." On cross-examination, mother conceded that she had previously relapsed into drug use after completing two or three separate residential drug

3

rehabilitation programs. Mother also conceded that her current residential program was "bible-centered" and did not have drug counselors on staff.

The court terminated family reunification services to mother, finding no "substantial probability that the children could be returned to the mother and safely maintained in their home." The trial judge questioned mother's credibility and said she believed mother is "working on herself, but I don't find her working on her children . . . ." The court set a permanency planning hearing (§ 366.26) for Jordan but not Alexis. The paternity of Alexis had recently been established and the biological father was granted reunification services. Mother neither appealed nor sought writ review of the order terminating her reunification services to both children and setting a permanency planning hearing for Jordan.

Jordan's permanency planning hearing was held on August 29, 2013, at which the court terminated parental rights and ordered Jordan placed for adoption. We affirmed the order on appeal. (*In re Jordan D.* (June 3, 2014, A139927) [nonpub. opn.].) Alexis's permanency planning hearing was held on December 31, 2013. In advance of the hearing, the bureau filed a report recommending termination of parental rights and adoption by the foster mother who had cared for both children since June 2012. Alexis's father supported the recommendation but mother opposed it. The court terminated all parental rights and ordered Alexis placed for adoption. Mother filed a timely notice of appeal.

**Discussion**

Mother contends the juvenile court terminated her family reunification services in April 2013 without determining that returning the child to mother's custody would be detrimental to the child's well-being. Mother further contends that the error invalidates the court's termination of parental rights in December 2013 because due process requires a finding of detriment before parental rights may be terminated.

Mother never sought review of the April 2013 order, thus forfeiting all claims relating to it. It is well-established that "an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1151.) The forfeiture

4

rule applies to constitutional claims. (*Ibid.*) Even were forfeiture not to apply, mother's claim fails on the merits because the court *did* make a finding of detriment at both the August 2012 disposition hearing and the April 2013 review hearing.

The court stated, at the disposition hearing, "I find, by clear and convincing evidence, that placement of the child with mother would be detrimental." The court's written order contains the further finding that "[r]eturn to home would create substantial risk to child's well-being."

At the April 2013 review hearing, the court stated that the child could not be "safely returned and safely maintained" in mother's custody and that "placement of the child continues to be necessary." The court also adopted the recommendations stated in the bureau's written report. Among those recommendations, the bureau asked the court to "[f]ind that the return of the child to the custody of her mother would create a substantial risk of detriment to the safety, protection or physical or emotional well-being of the child." The court said "I am going to follow all the recommendations" listed in the report and began to recite each recommendation. The court then asked mother's counsel if she would "waive irregularities" so that it did not have to read each of the remaining recommendations. Counsel replied, "Yes, Your Honor." The court adopted the recommendations, thus making the necessary finding.

**Disposition**

The order is affirmed.

 

 

 

 

_____

Pollak, J.


We concur:


_____

McGuiness, P. J.


_____

Jenkins, J.

A140975