Filed 10/28/20  In re K.A. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| In re K.A., a Person Coming Under the Juvenile Court Law. | B305019 |
| | (Los Angeles County Super. Ct. No. 19CCJP06115A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| B.C., | |
| Defendant and Appellant. | |
| Nathan A., | |
| Respondent. | |

APPEAL from order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

Aida Aslanian, under appointment by the Court of Appeal, for Respondent.

---

## INTRODUCTION

Appellant B.C.'s (Mother's) appeal, initiated February 24, 2020, is twofold.  First, she appeals from the juvenile court's November 20, 2019 dispositional order removing her daughter from her care and custody.  Second, she appeals from the court's February 4, 2020 final custody order which incorporated her signed mediated agreement with the child's father as to custody and visitation.

By separate order dated September 17, 2020, we dismissed as untimely Mother's appeal of the November 20, 2019 removal order.  We now affirm the February 4, 2020 custody order.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Referral and Investigation*

Mother and Nathan A. (Father) are the parents of six-year-old daughter K.A.  At the outset of the case, Father resided in Louisiana and Mother resided in California with K.A.  Mother and her boyfriend (boyfriend) are the parents of one-year-old D.C.  D.C. is not a subject of this appeal.

In July 2019, the family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) after Mother called the police and reported a "domestic violence altercation" with boyfriend.  Mother alleged he hit her

2

neck, jaw, head, and abdomen "with a closed fist" after she "complained" that their home was messy and told him "to do something about it." Both children were present during the incident, but remained unharmed. Police took an incident report and arrested boyfriend. Mother said she would prepare "paperwork for an EPO" against him.

Throughout July and August 2019, DCFS made several attempts to contact Mother—to no avail. Boyfriend told DCFS she was residing at maternal grandmother's (MGM) home. However, MGM told DCFS she did not know where mother was residing and that Mother had moved out two months ago.

Mother's stepfather reported that boyfriend is dangerous and a "bad influence." He said boyfriend is a gang member who "slashed his tires" in the past. He stated there had been domestic violence between Mother and boyfriend about 18 months ago.

On August 20, 2019, DCFS interviewed K.A. at school. The social worker (CSW) observed K.A. in clean clothes, with her hair braided. K.A. stated she resided with Mother, boyfriend, and D.C. at boyfriend's home. She said they moved back into boyfriend's home after Mother had a "big fight" with maternal aunt, resulting in Mother kicking the aunt "on the stomach."

K.A. told the CSW: Mother disciplines her by "whooping" her. Mother hits her on her lower back with a belt, making her cry because "it hurts." Mother and boyfriend discipline D.C. by hitting her with "an open hand" on her arm. Boyfriend sometimes flicks his fingers on her and D.C.'s forehead.

K.A. reported Mother and boyfriend smoke marijuana in the house; K.A. described the "weed" as "rolled", "brown", with "2 cut circles." K.A. said Mother "smokes marijuana when she is cooking." She said Mother and boyfriend also smoke marijuana

3

in the car while K.A. and D.C. are in the car. She stated Mother and boyfriend sometimes "blow the smoke out through the windows" but other times "put the windows up" and do not blow out the smoke, causing her and D.C. to cough and have difficulty breathing. The smoke also hurt their eyes.

K.A. recalled an incident where Mother "wanted to kill herself in the past" because of "having too many fights" with boyfriend. K.A. described how Mother held a knife and said she wanted to kill herself because of boyfriend; Mother did not end up hurting herself, because he promised they would no longer fight.

During the course of its investigation, DCFS discovered Mother and boyfriend had been involved in "10 incidents of domestic violence during their 6-year relationship." K.A. told the CSW she was afraid that boyfriend "may hurt her mother."

B. *Removal, Petition, and Detention*

On September 11, 2019, the juvenile court issued warrants authorizing DCFS to remove K.A. and D.C. from Mother. The children were removed on September 17, 2019.

On September 19, 2019, DCFS filed a petition pursuant to Welfare and Institutions Code[1] section 300 on behalf of both minors. The operative petition was interlineated by the juvenile court. It alleged:

Count b-1: Mother and boyfriend have a history of engaging in violent altercations in the presence of the children. Boyfriend's violent conduct and Mother's failure to protect the children by allowing him to continue residing in the children's

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

home endangered the children's safety and placed them at risk of harm.

Count b-2: Mother has a history of substance use and is a recent user of marijuana. She was under the influence of marijuana while the children were in her care and supervision. Because her children are of such tender age as to require constant supervision, Mother's substance use interferes with and renders her incapable of providing regular care and supervision.

Count b-3: Boyfriend has a history of substance use and is a recent user of marijuana; he was under the influence of marijuana in the children's presence. Mother knew of his substance use and failed to protect the children in that she allowed him to reside in the children's home and have unlimited access to them.

At the detention hearing on September 20, 2019, Mother and boyfriend denied the allegations in the petition. The juvenile court found "a prima facie case" that the children are persons described by section 300.

The court found Nathan A., who appeared by telephone from Louisiana, to be K.A.'s presumed father. Father indicated to the court he last saw K.A. when she visited at Christmas.[2] Father further indicated he wished to have K.A. placed in his care "as soon as possible." The juvenile court ordered K.A. released to his care, and stayed the order pending DCFS's recommendation.

---

[2]    Mother met Father while attending high school in Louisiana. They "were together" for three years and K.A. was born when Mother was 18 years old. According to Father, Mother and K.A. lived in Louisiana until Mother moved to California with K.A. without letting Father know.

On October 4, 2019, DCFS assessed Father's home. Father lived with his wife, their newborn, and wife's five-year-old daughter from a previous relationship. Father had prepared a bedroom for K.A. in his home. Father worked at a nursing home and was studying to obtain his commercial driver's license. The CSW described Father as "cooperative" and "easy to engage"; the CSW denied any concern about domestic violence, substance abuse, or mental health. Father "expressed repeatedly how important family is to him." The CSW found the home clean and appropriate and recommended K.A. be released to home of Father.

DCFS transported K.A. to the Los Angeles International Airport where Father accompanied her on the flight to Louisiana.

DCFS continued its investigation. On October 17, 2019, Mother told the CSW she had ended her relationship with boyfriend because she wanted to "find [her] peace" and accepted that their relationship was "toxic." Mother admitted to smoking marijuana but said she was "not a hard smoker" and did not smoke every day. She denied smoking inside the house or near the children; she also denied driving a car with the children as passengers while she was under the influence of marijuana. She confirmed boyfriend used marijuana daily.

Mother provided DCFS with proof of her enrollment in parenting and domestic violence classes at the Parent Involvement Center; as of November 4, 2019, she had attended four parenting classes and four domestic violence classes. Mother also provided DCFS with a letter from Bright Horizons Counseling Services, indicating her enrollment in individual therapy services.

On November 8, 2019, the CSW paid a visit to Father's home. K.A. appeared "clean, well-nourished, well groomed," and "in a happy mood evidenced by [her] smiling"; however, she did tell the CSW she missed Mother and her sister D.C. The CSW observed no safety concerns at the home. Father reported his plan to enroll K.A. in individual counseling because she is "scared to go to the restroom during . . . the day." Father indicated K.A. had a dental appointment in a few days.

On November 15, 2019, Mother moved into a shelter with the Los Angeles Community Outreach.

C.    *Adjudication*

November 20, 2019 was the date of the combined jurisdictional and dispositional hearing. Mother and boyfriend pled no contest. The juvenile court accepted their pleas and sustained the interlineated petition. The court found: "Based on the pleas, as well as the information in the record . . . that the children are persons described by . . . section 300." The minute order noted K.A. was "declared a dependent of the court" under section 300, subdivision (b).

The court proceeded to disposition. After hearing argument, the juvenile court stated it is "going to be adopting the recommendation to close the case." It found Father "is willing and able to provide [K.A.] with a safe home" and stated it "will be making removal orders from the mother." The court then terminated jurisdiction as to K.A. and granted sole physical custody of K.A. to Father and joint legal custody to both parents; the court permitted Mother overnight visits with K.A. The court stayed the termination and custody orders pending its receipt of the juvenile custody order and scheduled mediation for Mother and Father to work out a visitation schedule.

7

Father was deemed "non-offending."

D.  *Juvenile Custody Order*

On January 24, 2020, the parties participated in mediation which resulted in an agreement signed by both parties. Mother's parenting time included up to 2 weeks during the summer with K.A. in California and any additional days as mutually agreed upon by both parents. The agreement also contained holiday and vacation provisions for Thanksgiving, Christmas, and K.A.'s birthday. The agreement repeated the juvenile court's legal and physical custody orders pronounced at the November 20, 2019 hearing.

On February 4, 2020, the juvenile court signed the custody order and parentage judgment, incorporating the parties' mediated agreement. The court ordered the stay lifted and dependency jurisdiction terminated.

On February 24, 2020, Mother filed a notice of appeal challenging the court's November 20, 2019 removal order and February 4, 2020 custody order. As previously noted, Mother's challenge to the removal order has been dismissed as untimely. We do not address the propriety of the November 20, 2019 removal order again in this disposition.

## DISCUSSION

*Mother's Appeal of the February 4, 2020 Custody Order*

The juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case, (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) In fashioning custody and visitation orders, the juvenile court's "focus and primary consideration must always be the best interests of the child." (*Id.* at p. 268.) It must utilize its " 'broad

8

discretion to determine what would best serve and protect the child's interest and to fashion . . . order[s] in accordance with this discretion.' " (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.)

The court's final juvenile custody order—also known as an exit order—"remain[s] in effect after [dependency] jurisdiction is terminated" and may thereafter be modified by the family court if (1) "there has been a significant change of circumstances," and (2) "modification . . . is in the best interests of the child." (§§ 302, subd. (d), 362.4, subd. (b); *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1163; see also *In re Marriage of Carney* (1979) 24 Cal.3d 725, 730–731.)

Mother first contends we should vacate the February 4, 2020 order because of alleged errors committed by the court during the November 20, 2019 hearing. As Mother's appeal of the November 20, 2019 removal order has been dismissed as untimely, she cannot subsequently attack it by way of her appeal of the February 4, 2020 custody order. (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150.)

Mother next argues we should reverse the custody order because the court failed to state on the record or in writing the factual basis for the order, as required by section 361, subdivision (c), and California Rules of Court, rule 5.695(a)(7)(A).[3]

---

[3]    Section 361, subd. (c) provides that a dependent child shall not be removed from the physical custody of the custodial parent at the outset of the case unless the juvenile court finds clear and convincing evidence there is or would be substantial danger to the physical health, safety, or emotional well-being if the minor was returned home, warranting removal.

9

We disagree.  Based on our review of the record, the court did, in fact, state on the record and in writing the factual basis for the order.  When the court amended the petition by interlineation, it described the three counts it found true.  The specific information in the counts, to wit, boyfriend's violent altercations with Mother in front of K.A., and both adults' marijuana use in K.A.'s presence, coupled with Mother's decision to continue living with K.A. at boyfriend's home and to allow him unlimited access to K.A. constitutes the factual basis in support of the court's custody order.

Additionally, the juvenile court stated on the record during the November 20, 2019 hearing that Father (the non-custodial parent per Cal. Rules of Court, rule 5.695(a)(7)(A)) "is willing and able to provide [K.A.] with a safe home" and stated it "will be making removal orders from the mother."  The court declared dependency when it specified "[b]ased on the pleas, as well as the information in the record . . . that *the children are persons described by . . . section 300.*"  (Italics added.)

Further, Mother pleaded no contest to the jurisdictional allegations that she had endangered her children.  "Our Supreme Court has explained that '[a] plea of "no contest" . . . is the juvenile court equivalent of a plea of "nolo contendere" . . . in criminal courts.  A plea of "no contest" to allegations under section 300 at a jurisdiction hearing admits all matters essential

California Rules of Court, rule 5.695(a)(7)(A) provides that the court may declare dependency and remove physical custody from the parent after stating on the record or in writing the factual basis for the order, order custody to a noncustodial parent, terminate jurisdiction, and direct that the juvenile custody order be prepared and filed.

10

to the court's jurisdiction over the minor.' " (*In re Andrew A.* (2010) 183 Cal.App.4th 1518, 1526.)  Thus, Mother is barred from bringing an appeal to challenge the findings and allegations she has already admitted.  (*Ibid.*)

Notably, Mother fails to apply the correct standard of review on appeal, i.e., whether the juvenile court abused its discretion in issuing the February 4, 2020 custody order.  She did not explain in her briefing why the terms of the custody order are arbitrary or contrary to K.A.'s best interests.  (See *In re Corrine W.*, *supra*, 45 Cal.4th at p. 532.)  In addition, the February 4, 2020 juvenile custody order incorporated the mediated agreement which set out the custody and visitation terms Mother herself agreed to by signing the mediation agreement.  Because she stipulated to these specific custodial terms, which formed part of the juvenile custody order, we reject Mother's contention that she was prejudiced by the issuance of the order.  (*See In re Richard K.* (1994) 25 Cal.App.4th 580, 589–590 ["He who consents to an act is not wronged by it" and Mother's agreement "dispels any challenge to and, in essence, endorses" the court's issuance of the orders]; *see In re Jennifer V.* (1988) 197 Cal.App.3d 1206, 1209 [A party "may not appeal from an order or judgment entered pursuant to stipulation"].)

11

**DISPOSITION**

We affirm the February 4, 2020 custody order.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.

We concur:



BIGELOW, P.  J.



GRIMES, J.