Filed 2/13/24  In re J.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.L., a Person Coming Under the Juvenile Court Law. | C097810 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJDDP20200000318) |
| Plaintiff and Respondent, | |
| v. | |
| C.L. et al., | |
| Defendants and Appellants. | |

Y.T. (mother) appeals from the juvenile court's order terminating parental rights and freeing the minor, J.L., for adoption.  (Welf. & Inst. Code, §§ 366.26, 395; undesignated statutory references are to the Welfare and Institutions Code.)  Mother contends:  (1) the juvenile court violated mother's right to retain care and custody of her child; (2) the juvenile court abused its discretion in not returning custody of the minor to mother;  (3) the county human services agency (agency) and the juvenile court failed to

1

ensure mother received visitation with the minor; and (4) the juvenile court erred by finding the beneficial parental relationship exception to termination of parental rights did not apply. We conclude these claims either have been forfeited or lack merit.

C.L. (father) separately appeals but does not present his own arguments. He requests reversal of the juvenile court's termination of his parental rights if we reverse termination of mother's parental rights. Since we reject mother's claims, we necessarily reject father's as well.

We affirm the juvenile court's order terminating parental rights.

FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2022, the agency filed a section 300 petition on behalf of the minor, a newborn boy, based on allegations of (1) failure to protect the minor due to ongoing domestic violence between mother and father and mother's unstable mental health, and (2) abuse of the minor's siblings indicating a substantial risk that the minor will suffer abuse and neglect. On September 17, 2020, the juvenile court found that the minor came under section 300 and that continuation of the minor in the parents' home would be contrary to his health and welfare. The court ordered temporary care and placement of the minor with the agency, specifying the court's approval of placement with a relative. The juvenile court directed the agency to arrange visitation by the parents with the minor.

On October 29, 2020, the juvenile court found the minor came within its jurisdiction and adjudicated the minor a dependent of the court. The juvenile court found by clear and convincing evidence that the minor must be removed from the parents' home and placement was appropriate and necessary.

On August 16, 2022, the juvenile court found by clear and convincing evidence that placement was necessary. The court terminated the parents' reunification services and set a section 366.26 hearing.

2

On December 1, 2022, the agency filed a section 366.26 report. The agency recommended termination of the parental rights of mother and father to free the minor for adoption.

The report noted that the minor was currently placed with his paternal grandparents, who desired to adopt him. The report described in detail the history of visitation leading up to and during the minor's current placement. Originally, the plan was for the minor to be adopted by his adult sister, V.L., who had served as the caregiver for the minor and his siblings since mid-November 2021, when the minor's sibling, K.T., was born. K.T. died unexpectedly on June 26, 2022, while in V.L.'s care, prompting placement of the minor with his paternal grandparents.

In the assessment and evaluation section of the section 366.26 report, the agency stated that between December 2019 and January 2020, it became clear there were significant issues regarding domestic violence between mother and father, as well as concerns about mother's unstable mental health. Their children, as well as their parents and neighbors, reported continuous verbal and physical altercations between mother and father that put their children in unsafe and unstable situations. Continuing concerns about domestic violence and mother's untreated mental health issues led to termination of the parents' reunification services for the minor in August 2022. Despite their history of domestic violence, in February 2022, mother and father resumed a romantic relationship and moved back into the family home.

On January 11, 2023, the juvenile court conducted a section 366.26 hearing. The court received the agency's section 366.26 report in evidence without objection by the parents. No other evidence was presented. Mother and father objected to termination of parental rights, arguing in favor of guardianship. After hearing argument by counsel for the parties, the juvenile court noted that at this stage the burden had shifted to the parents, who had presented no evidence.

The juvenile court found by clear and convincing evidence that the minor was likely to be adopted.  The court concluded it was in the minor's best interest to have parental rights terminated and termination was not detrimental to the minor.  The court further concluded that none of the exceptions to termination applied.  The juvenile court terminated the parental rights of mother and father.

Mother and father filed separate notices of appeal from the January 11, 2023 order terminating parental rights.

DISCUSSION

I

*Custody and Care of the Minor*

We conclude that mother has forfeited any claims regarding the juvenile court's removal of the minor from her care and custody and failure to return him to her by failing to file a timely appeal.

Section 395 governs this appeal, providing that "[a] judgment in a proceeding under section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment . . . ."  (§ 395, subd. (a)(1).)  Section 395 " 'makes the dispositional order in a dependency proceeding the appealable "judgment." ' "  (*In re Janee J.* (1999) 74 Cal.App.4th 198, 206, quoting *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150.)  "[T]he dispositional order is the adjudication of dependency and is the first appealable order in the dependency process."  (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 196.)

" 'A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order.'  [Citation.]  An appeal from the most recent order in a dependency matter may not challenge earlier orders for which the time for filing an appeal has passed."  (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018; see also *In re S.B.* (2009) 46 Cal.4th 529, 531-532; *In re Meranda P., supra*, 56 Cal.App.4th at

4

p. 1151 [an appellate court in a dependency proceeding may not review the merits of prior appealable order on appeal from a later appealable order].)  "Additionally, ' " '[o]ur jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' " ' "  (*D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 387, quoting *In re J.F.* (2019) 39 Cal.App.5th 70, 75.)

Mother and father appeal only from the order issued at the section 366.26 hearing terminating parental rights.  They did not appeal from the disposition order or any order thereafter until the section 366.26 hearing.  By failing to appeal, inter alia, the juvenile court's adjudication of dependency on October 29, 2020, or termination of reunification services on August 16, 2022, mother has forfeited any complaint she may have regarding removal of the minor from her care and custody or failure to return him.  (*Sara M. v. Superior Court, supra*, 36 Cal.4th at p. 1018.)  Moreover, such claims are outside the scope of her notice of appeal.  (*D.S. v. Superior Court, supra*, 88 Cal.App.5th at p. 387.)

II

*Visitation*

Mother contends without citation to the record that:  (1) "[b]y failing to comply with the court's minimum visitation order, [agency] failed to provide essential and reasonable services to [mother], which would allow her to maintain a relationship with the child," and (2) "the record showed mother was denied visitation, against court order and case law when visits were cancelled or did not take place."

Mother does not identify any place in the record documenting that the claimed noncompliance with the visitation order and denial of visitation occurred.  "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and *citations to facts in the record* that support the claim of error."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408, italics added.)  "[C]onclusory claims of error will fail."  (*Ibid.*)

5

In addition, "to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court.  [Citation.]  'The rule that contentions not raised in the trial court will not be considered on appeal is founded on considerations of fairness to the court and opposing party, and on the practical need for an orderly and efficient administration of the law.'  [Citations.]  Otherwise, opposing parties and trial courts would be deprived of opportunities to correct alleged errors, and parties and appellate courts would be required to deplete costly resources 'to address purported errors which could have been rectified in the trial court had an objection been made.'  [Citation.]  In addition, it is inappropriate to allow any party to 'trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable.' " (*In re S.C., supra*, 138 Cal.App.4th at p. 406.)

"The party also must cite to the record showing exactly where the objection was made.  [Citations.]  When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made." (*In re S.C., supra*, 138 Cal.App.4th at p. 406.)

Moreover, forfeiture aside, the record does not support mother's visitation claims. As described in the agency's report, received in evidence without objection at the section 366.26 hearing, the minor initially received supervised, separate visits by each parent twice a week for one and a half hours that increased to four times weekly in mid-December 2020 in the family home for four hours under the supervision of the adult caregiver, V.L., the minor's eldest sister.  In June 2021, weekly visits decreased to twice weekly for mother and three times a week for father ranging from two to eight hours, with both parents occasionally visiting together.  In mid-August 2021, both parents began visiting twice a week for four or five hours on one day and eight hours on the other. After the birth of K.T. in November 2021, mother visited virtually until early January

2022. Around that time, V.L. objected to supervising visits with mother because she spoke ill of father and there continued to be allegations of domestic violence. Shortly thereafter, V.L. rescinded the objection but asked the social worker to speak with mother about her negative conduct. In April to May 2022, the parents visited separately one day a week for 10 hours. In May 2022, the juvenile court granted the agency discretion to set up extended and overnight visits with C.L. to assess the possibility of reunification in the family home.

However, in June 2022, V.L. reported to a social worker that, on June 19, 2022, mother became emotional during a visit and slapped V.L. This incident was followed closely by the death of the infant K.T. on June 26, 2022, while in V.L.'s care, leading to the placement of the minor with his paternal grandparents. Father continued to visit the minor until August 2022. In September 2022, mother arrived at the home of the minor's paternal grandparents on a non-visitation weekday and asked to see the minor children. When the grandmother informed mother that the minor was in daycare, mother called the grandmother a liar and asked to see him. Mother had not visited since then.

This record refutes mother's claim that the agency failed to comply with the juvenile court's visitation orders or that she was denied visitation. In addition, mother does not contend that she complained of noncompliance or denial of visitation at any point in the history of visitation set forth in the section 366.26 report. Accordingly, we conclude mother's visitation claims were forfeited and, to the extent not forfeited, are meritless.

III

*Beneficial Parental Relationship Exception*

At a section 366.26 hearing, the juvenile court must choose one of " 'possible alternative permanent plans for a minor child . . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citation]. If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be

7

detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) Only under limited circumstances may the court find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child . . . ." (§ 366.26, subd. (c)(1)((B).) The beneficial parental relationship exception is one such circumstance. (§ 366.26, subd. (c)(1)(B)(i); *In re Caden C.* (2021) 11 Cal.5th 614, 629 (*Caden C.*).

Here, neither mother nor father raised the exception at the section 366.26 hearing, confining their argument to their preference for guardianship. The juvenile court stated that "[n]one of the exceptions pursuant to Welfare and Institutions Code Section 366.26(c)(1) exist."

However, counsel for the agency did mention the parental-benefit exception in argument and counsel for father briefly responded that he had "regular and consistent visitation" with the minor in the family home and was about to start overnight visitation when K.T. died. Nonetheless, "[t]he burden is on the parent asserting the parental relationship exception to produce evidence establishing that exception." (*In re A.G.* (2020) 58 Cal.App.5th 973, 996; see also *Caden C., supra*, 11 Cal.5th at pp. 636-637; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(2).) The parent must show by preponderance of the evidence "regular visitation and contact with the child, taking into account the extent of visitation permitted. Moreover, the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship. And the parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, at p. 636.) The court's decision that a parent has not satisfied this burden may be based on any or all of these components. (*In re A.G.*, at p. 996.)

8

The juvenile court examines the beneficial parental relationship exception to adoption "on a case-by-case basis, taking into account the many variables which affect a parent/child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) The substantial evidence standard applies to our review of the juvenile court's determinations whether the parent has consistently visited the child and whether the child would benefit from continuing the relationship. (*Caden C., supra*, 11 Cal.5th at pp. 639-640.) The ultimate determination whether termination of parental rights would be detrimental to the child due to the child's relationship with the parent is reviewed for abuse of discretion. (*Id.* at p. 640.)

Regarding regular visitation, mother contends she "maintained regular, meaningful visitation with her child." Any visit mother did not attend, she attributes—without citation to the record—to the agency's failure to ensure the visit took place. We conclude mother failed to carry her burden on this element. As discussed above, while mother regularly visited the minor until June 2022, she had not seen him since. In other words, mother had not visited the minor for more than six months before the section 366.26 hearing. Mother attempted to visit the minor in September 2022 at his paternal grandparents' home, but the visit was evidently not scheduled according to any visitation order issued by the juvenile court and mother made no effort thereafter to arrange for visitation. We conclude that the evidence presented at the section 366.26 hearing showed that mother's visitation was sporadic. (See *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324 [mother's visits were previously consistent but sporadic during six months prior to the section 366.26 hearing].) Sporadic visitation is insufficient to satisfy the regular visitation element of the beneficial parental relationship exception. (*In re C.F.* (2011) 193 Cal.App.4th 549, 554.)

Regarding the minor's substantial, positive, emotional attachment, mother contends this was "easily" established "because [she] attended the child's medical appointments, maintained contact with the child, and provided appropriate care for the child, during visits and immediately after his birth."[1]  This assertion is insufficient and unsupported by a citation to evidence in the record.  " 'To meet the burden of proving the section 366.26, subdivision (c)(1)(B)(i) exception the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits — the parent must show that he or she occupies a parental role in the life of the child.' " (*In re A.G., supra*, 58 Cal.App.5th at p. 995.)  Mother asserts at most that she loved and cared for the minor enough to maintain regular contact and perform parental obligations.  Mother offers no evidence of the minor's emotional attachment to her such that she fulfilled the role of parent to him.  To the contrary, the minor, not quite three years old at the time of the hearing, was removed from mother's care at birth and has lived his life with relatives.  Thus, the minor was too young to understand the concept of biological parents, had spent relatively few hours with mother versus many hours with other relatives, and there was no evidence that the minor's needs could be met only by mother. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467-468.)  Thus, relevant facts did not establish the requisite attachment between the minor and mother.  (*Ibid.*)

Finally, as mentioned, mother did not present any evidence supporting the exception at the section 366.26 hearing, including evidence that terminating her relationship with the minor would be detrimental to him.  " 'To overcome the preference

---

[1]     Mother also asserts that "both parents requested legal guardianship, instead of adoption so that they could continue working toward[] reunification with their young child."  Their preference for guardianship is irrelevant to whether the parental beneficial relationship exception applies.  Under section 366.26, subdivision (c)(4), the court considers guardianship as the permanent plan only if it has rejected adoption "due to the applicability of statutory exceptions."  (*In re Keyonie R.* (1996) 42 Cal.App.4th 1569, 1573; *In re Cody W.* (1994) 31 Cal.App.4th 221, 231.)

10

for adoption and avoid termination of the natural parent's [parental] rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed.' " (*In re G.H.* (2022) 84 Cal.App.5th 15, 25, quoting *In re Angel B., supra*, 97 Cal.App.4th at p. 466.)  Here, mother does not assert detriment to the minor or establish that evidence showed that terminating her parental rights would "*greatly* harm[]" the minor.  (*In re Angel B.*, at p. 468; see also *In re Jason J.* (2009) 175 Cal.App.4th 922, 938.)

We conclude the juvenile court properly found that no exception to termination of parental rights applied, including the parent-benefit exception.

## DISPOSITION

The juvenile court's order terminating the parental rights of mother and father is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
HULL, Acting P. J.

/s/
RENNER, J.

11