Filed 11/8/24  In re Rylee P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Rylee P., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>       Plaintiff and Respondent,<br>v.<br>Richard B.,<br><br>       Defendant and Appellant. | A170618<br><br>(San Francisco County Super. Ct. No. JD233085) |

Richard B. (Father) appeals from juvenile court orders terminating his parental rights to his one-year-old daughter Rylee P. (Minor) after a hearing pursuant to Welfare and Institutions Code section 366.26.[1]  Father also purports to appeal from orders summarily denying a petition he filed under section 388 to allow visitation with minor.  He raises three arguments:  first, the juvenile court erred when it summarily denied two petitions he filed under section 388 to allow visitation with Minor; second, the court's earlier finding that visitation with Minor would be detrimental to her was not

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

1

supported by substantial evidence; third, the court's finding that the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1901 et seq.) does not apply must be reversed because of failure to comply with ICWA and related California law. Father's challenges to the court's denial of his section 388 petitions and its finding of detriment are not properly before us because Father failed to timely appeal from the orders at issue. The orders issued by the juvenile court at the section 366.26 hearing held on May 8, 2024 are affirmed, except that we will conditionally reverse the order terminating parental rights with directions for compliance with ICWA and related California law.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Petition and Detention*

In March 2023, the San Francisco Human Services Agency (Agency) filed a petition under section 300, subdivisions (b)(1) and (j), on behalf of Minor, who was just a few days old. Under section 300, subdivision (b)(1), failure to protect, the petition alleged that Minor was in a neonatal intensive care unit and was expected to be in the hospital for at least two weeks for observation;[2] that Minor's mother, S.P. (Mother), had ongoing mental health issues and a long history of substance abuse, and that although Mother stated that she stopped using substances when she learned she was pregnant, she tested positive two days after Minor's birth; and that Mother reportedly tried to flee from the hospital with Minor. The petition alleged that Father, identified as an alleged father, had a history of substance abuse issues for which he required assessment and treatment and had a child welfare history for physical abuse and neglect of two of his children. Under

_____

[2] It was later reported that Minor had been exposed to illegal substances in utero and spent the first 14 days of her life withdrawing from the effects of those substances.

section 300, subdivision (j), abuse of sibling, the petition alleged that Minor's maternal half-sibling was a dependent of the court due to Mother's substance abuse issues; that Mother failed to reunify and her parental rights had been terminated in October 2022; and that the half-sibling's permanent plan was adoption. The petition also alleged that Minor had two paternal half-siblings who had been dependents of the juvenile court due to physical abuse and neglect; that Father failed to reunify; and that the dependencies were dismissed because the half-siblings, now adults, completed extended foster care services. On Judicial Council form ICWA-010(A), Indian Child Inquiry Attachment, the Agency stated that Mother and Father had been questioned about Minor's Indian status and gave the social worker no reason to believe Minor was or may be an Indian child.[3]

In its detention report, the Agency reported that Father, who was not named on Minor's birth certificate, requested a paternity test before taking responsibility for Minor.

At the detention hearing the court ordered Minor detained and ordered paternity testing for Father.[4]

B.    *Jurisdiction and Disposition*

1.    *May 26, 2023 Report*

On May 26, 2023, the Agency filed a Jurisdiction/Disposition Report in advance of a settlement conference scheduled for May 30, 2023. The Agency recommended that the allegations of the petition be sustained; that reunification services be denied to Father because he had not obtained

---

[3] Mother is not a party to this appeal, and we discuss information about her only insofar as it is relevant to the issues before us.

[4] The record does not include a reporter's transcript of the detention hearing, or any of the other hearings held before March 6, 2024.

3

presumed father status and because the bypass provision of section 361.5, subd. (b)(10) applied;[5] and that the court set a section 366.26 hearing.

The Agency reported that the results of Father's paternity test indicated he was Minor's biological father. The Agency further reported that in early April 2023, Father informed a social worker that he was in a detox center, where he would be for 10 days before transferring to a different treatment center. A social worker called the contact number Father provided and asked Father to contact her, but he did not respond. Mother's relatives informed the Agency that Father had left the drug treatment program before completing it. The social worker sent Father a letter in mid-April instructing him to begin drug testing, but he had not started testing as of the date of the report. Father had failed to attend scheduled appointments with the social worker to discuss Minor's case or his current circumstances, which were unknown to the Agency. He had not visited with Minor.

The Agency reported that Minor had two paternal half-siblings who had been removed from Father's care, one due to physical abuse, and the other due to general neglect. Father's reunification services had been terminated as to both children, who remained in foster care until their cases were terminated when they reached the age of majority.

With respect to ICWA, the Agency reported that Mother "states she has Blackfoot on her maternal side of family and alleged father . . . states he has possible Oklahoma Blackfoot on his father's side." The social worker reported speaking with Minor's maternal grandmother and maternal great aunt, who

_____

[5] Section 361.5, subdivision (b)(10) applies when the court has terminated reunification services for a parent who failed to reunify with a minor's sibling or half-sibling and the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half-sibling . . . from th[e] parent." (§ 361.5, subd. (b)(10)(A).)

4

stated the family did not have Native American ancestry. The Agency recommended the court find that ICWA does not apply.

2. *Events Before the Jurisdiction/Disposition Hearing*

At the May 30, 2023 settlement conference, the court set a trial on jurisdiction and disposition for June 6, 2023. On June 6, 2023, the Agency filed an amended section 300 petition in which the allegations concerning Father were unchanged, and the matter was continued to September 18, 2023, apparently because the court was informed that Father was incarcerated. Father later reported that he had been on probation for drug possession and was in jail from May 6 to September 6, 2023 for a probation violation.

On July 18, 2023, Father filed Judicial Council form ICWA-020, Parental Notification of Indian Status. He checked the box indicating "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe," and listed the name of the tribe as "unknown."

On July 26, 2023, Father filed a request to be elevated to biological father based on his paternity test results, and the petition was granted at a hearing on July 28, 2023. The court ordered that Father was "not to receive visitation until further order of the Court, which has found visitation with the child would be detrimental." The order further stated, "No visitation is ordered without prejudice."

On September 6, 2023, the Agency filed an addendum report with the same recommendations from its May 2023 report. The social worker reported that when she spoke with Father in mid-August, he said he would enter a residential drug treatment program upon his release from jail, which was anticipated to be September 6, 2023. With respect to ICWA, the addendum report stated, "Additional inquiry is required to determine whether there is

5

reason to believe or reason to know an Indian child is involved. The Agency will reach out to Blackfoot tribes, via email, text, phone and certified letter, to inquire about possible membership for the minor."

### 3. *Contested Jurisdiction/Disposition Hearing*

Father was present with his attorney at the contested jurisdiction and disposition hearing, held on September 18, 2023. The court heard testimony from the social worker, Mother, and Father; admitted into evidence the Agency's various reports; and took judicial notice of documents from the dependency case files of Minor's paternal half-siblings, as the Agency had requested.

The court found true the allegations in the petition; declared Minor a dependent of the juvenile court; determined that "[r]eunification services need not be provided to the biological father"; and ordered "no visits at this time for either parent." The court's written orders do not include any ICWA findings. A hearing to select a permanent plan for Minor under section 366.26 was scheduled for January 2024, and Judicial Council form JV-820, Notice of Intent to File Writ Petition, was provided to Father in open court. No writ petition was filed.

### C. *Father's Section 388 Petitions*

#### 1. *November 2023 Petition*

In November 2023, Father filed a petition under section 388 to be elevated to presumed father status and be allowed to visit Minor.[6] As to

---

[6] Section 388 authorizes the parent of "a child who is a dependent child of the juvenile court" to petition the court "for a hearing to change, modify, or set aside" a previous court order. (§ 388, subd. (a)(1).) To trigger the right to an evidentiary hearing, the petitioner must make a prima facie showing that there is a change in circumstances or new evidence, and that the proposed modification is in the child's best interest. (*In re A.S.* (2009) 180 Cal.App.4th

changed circumstances, Father stated that he had been released from custody in September 2023, where he had participated in rehabilitation programs. Since his release, he was continuing to engage in sober lifestyle practices, he was committed to his sobriety, and had housing. Father further stated that the changed order would be better for Minor because he was her father, and "[h]is daughter should know him." The petition was supported by a declaration from Father; a copy of a signed lease for an apartment; and letters and certificates attesting that he completed several programs while he was incarcerated and had recently begun participating in a parenting group and an abstinence-based therapy and housing program.

At a hearing held on December 12, 2023 to determine whether the juvenile court should grant or deny an evidentiary hearing on the petition, which Father attended with his attorney, the court denied the petition. Father was informed of his appellate rights but did not file a notice of appeal.

2. *February 2024 Petition*

In February 2024, Father filed a second section 388 petition, this time asking the court to order reunification services and visitation. As to changed circumstances, Father stated that he was engaged in services, had stable housing, and was clean and sober. He further stated that the changed order would be better for Minor because he wanted to be an active and involved father; he raised two other children; and he believed he could be a positive participant in Minor's life. The petition was supported by a new declaration from Father, as well as letters and certificates, some of which had been attached to his prior petition, attesting to his participation in or completion of various programs including substance abuse groups and classes.

351, 357.) The denial of an evidentiary hearing on a modification petition is reviewed for abuse of discretion. (*Id.* at p. 358.)

Father and his attorney were present at a hearing held on March 6, 2024 to determine whether the juvenile court should grant or deny an evidentiary hearing. Early in the hearing, the court noted that at a previous hearing Minor's counsel had taken the position that "[F]ather had a long way to go. He could have done treatment before incarceration, and he had a long way to go after incarceration." Minor's counsel stated her position had not changed, and that much of the information submitted with the petition had already been put before the court. Counsel for the Agency agreed that the bulk of the information had already been presented to the court and argued that Father's circumstances were changing but not changed, and that in any event Father had not demonstrated that it would be in Minor's best interest to provide him with reunification services. Mother was not present, but her counsel stated that Mother reported that Father "contributed to . . . her own drug addiction and struggles with that," and that he did not believe Mother would support Father's petition. The court concluded that Father had not made a showing to justify an evidentiary hearing, and denied the petition. Father was informed of his appellate rights, but no notice of appeal from the order was filed until May 31, 2024.

D. *Section 366.26 Reports and Hearing*

Meanwhile, in December 2023, the Agency filed its section 366.26 report recommending that Minor remain in her out-of-home placement; that adoption be approved as the permanent plan; and that parental rights be terminated. The Agency reported that Minor, then nine months old, was thriving in the care of her maternal great aunt and was meeting developmental milestones. Maternal great aunt, who expressed interest in adopting Minor, reported that Minor was an "easy and happy" baby and enjoyed playing with her two-year-old maternal half-sister, who had been

8

adopted by maternal great aunt. The Agency reported that Father had been denied visitation on September 18, 2023, that Minor did not know him and had no relationship with him, and that Father had not showed interest in Minor's wellbeing. The Agency opined that Minor was "at a critical stage in her development, during which stability with a primary caregiver/s is crucial to her development and wellbeing," and assessed that maternal great aunt was meeting Minor's developmental and emotional needs. With respect to ICWA, the Agency had apparently sent information to four different tribes about Minor and her parents in an attempt to determine whether Minor was an Indian child. The Agency reported that it had not received any response from the Blackfeet tribe, but that the Cherokee Nation, United Keetoowah Band of Cherokee Indians, and Eastern Band of Cherokee Indians had reported that Minor was not an Indian child in relation to them.[7] The Agency recommended the court find that ICWA does not apply to Minor.

In January 2024, the section 366.26 hearing was continued to March 2024, apparently because Mother had been incarcerated and the Agency had not learned about that in time to provide notice, and then further continued to May 2024.

The Agency filed an addendum report in April 2024, with the same recommendations as in its previous report. Maternal great aunt reported that Father had not reached out to her to ask about Minor. With respect to ICWA, the Agency reported that the Blackfeet Nation had responded that

---

[7] The record includes copies of the responses from the three Cherokee tribes, which were filed in the juvenile court, but does not appear to include any information explaining why those tribes were contacted.

9

Minor was not an Indian child with respect to that tribe.[8]  The Agency again recommended the court find that ICWA does not apply to Minor.

At the section 366.26 hearing, held on May 8, 2024, the juvenile court received into evidence the Agency's section 366.26 report and its addendum report and heard testimony from social worker Amy Hipps, who confirmed that Father told her he had completed a drug program and had obtained housing.  Hipps testified that Father had twice asked for visitation with Minor and testified that there was no relationship between Father and Minor.  Father did not present any evidence or testify on his own behalf.

Father's counsel made the following argument to the court:  "Your honor, my client feels that he has made multiple requests to visit his child and tried on several occasions to be made presumed father and requested services.  And that he has—there is, as the Court is aware, a 388 motion that was filed in February outlining all of the activities and programs that he has done and—and the fact that he is in a place and believes it would be appropriate to have interaction and a relationship with his daughter.  [¶] He makes that request to you for you to not terminate his parental rights, to allow him to have the opportunity to try to develop a relationship with his daughter.  He believes that would be in the child's best interest.  He is her biological father, and he thinks it's important for children to have that connection with their biological parent.  He would like to be her father and be considered and to receive services, or at least to be—not to have his parental rights terminated.  [¶] So we request that the court not follow the recommendation and not terminate parental rights but allow this to go as a guardianship.  Submitted."

---

[8] A copy of the response from the Blackfeet Nation was filed in the juvenile court and is included in the record.

The court found by clear and convincing evidence that Minor was likely to be adopted and terminated parental rights. The court also found that there is no reason to believe or reason to know Minor is an Indian child and that ICWA did not apply.

On May 31, 2024, Father filed a notice of appeal from the juvenile court's March 6, 2024 order denying his second section 388 petition and the May 8, 2024 order terminating his parental rights.

## DISCUSSION

A. *Denials of Section 388 Petitions*

Father's first argument on appeal is that the juvenile court erred in denying his section 388 petitions without holding evidentiary hearings. Father contends that the orders made at the hearings on his section 388 petitions are appealable under section 395, subdivision (a)(1), but his appeal from those orders is untimely.

Section 395 provides that, "[a] judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a)(1).) The disposition order in a dependency proceeding is the "judgment" for purposes of section 395, which means that subsequent orders are appealable as post judgment orders. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 (*Meranda P.*) However, "an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." (*Ibid.*) In a dependency case, "[t]he time for appeal of an order . . . is 60 days from the date of the order's pronouncement in open court." (*In re A.J.* (2022) 77 Cal.App.5th 7, 16; see Cal. Rules of Court, rule 8.406(a)(1) [notice of appeal "must be filed within 60 days after the rendition of the judgment or the making of the order being

11

appealed"].[9]) Our Supreme Court has explained that " '[a]n untimely notice of appeal is "wholly ineffectual: The delay cannot be waived, it cannot be cured by nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion." [Citation.] The purpose of the requirement of a timely notice of appeal is, self-evidently, to further the finality of judgments by causing the [party] to take an appeal expeditiously or not at all.' " (*In re G.C.* (2020) 8 Cal.5th 1119, 1127.)

The disposition order in Minor's case was issued in September 2023 and therefore the December 12, 2023 and March 6, 2024 denials of Father's section 388 petitions were appealable orders. There is no indication in the record, or any assertion from Father, that Father ever filed a notice of appeal from the December 12, 2023 order, and the 60-day period for filing such notice has long passed. Father's May 31, 2024 notice of appeal from the March 6, 2024 order is untimely because it was filed more than 60 days after the order was pronounced in open court. Accordingly, we cannot consider his attacks on those orders now and must dismiss the appeal insofar as it seeks to challenge the denial of Father's section 388 petitions.

B.    *Denial of Visitation Based on Finding of Detriment*

Father argues that the juvenile court erred in denying him visitation when he was elevated to biological father status based on its finding that visitation would be detrimental to Minor and in continuing to deny visitation at the September 2023 jurisdiction/disposition hearing. He claims that the court's finding of detriment was not supported by substantial evidence and that by denying him visitation the court deprived him of any meaningful

---

[9] Undesignated references to rules are to the California Rules of Court.

12

opportunity to prove his section 388 petitions or argue for the parental benefit exception to the termination of his parental rights, thereby violating his due process rights and his First Amendment rights.

We summarize the relevant facts: When Father's status was changed from "alleged" to "biological" at a hearing in July 2023, the court ordered no visitation until further notice, based on a finding that visitation would be detrimental. The order was made without prejudice. Later, in its jurisdiction and disposition orders, made in September 2023, the court ordered "no visits at this time" for Father.

To the extent Father now seeks to challenge the July 2023 order and the September 2023 jurisdiction/disposition order as unsupported by substantial evidence, the challenges are untimely. Father never filed a notice of appeal or writ petition to contest either order, and we cannot now revisit them in this appeal from the May 2024 order terminating Father's parental rights. (*Meranda P.*, *supra*, 56 Cal.App.4th at p. 1150.)

To the extent Father seeks to challenge the denial of his section 388 petitions on the ground that he had previously been denied visitation, that challenge too, is untimely. As we have discussed, the denial of Father's section 388 petitions is not before us in this appeal.

To the extent Father claims that the lack of visitation compromised his right to establish the parental benefit exception to the termination of parental rights, his claim has been forfeited by his failure to raise the issue in the juvenile court. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221 ["[a] party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court"].) Father did not object to the setting of the section 366.26 hearing, and he did not seek to stay or continue the hearing on the grounds that any of his rights had been violated,

including his First Amendment and due process rights. At the section 366.26 hearing itself he did not assert any violation of his constitutional, statutory, or procedural rights. Nor did he assert any statutory exception to the termination of his parental rights, or argue that his right to assert any such exception had been compromised. In short, he did not argue that any of the juvenile court's previous orders had prejudiced his ability to contest the Agency's recommendation that his parental rights be terminated. Because Father did not raise these issues in the juvenile court, we will not consider them now. (See *In re N.O.* (2019) 31 Cal.App.5th 899, 935 ["a party may not assert theories on appeal which were not raised in the trial court"].)

Father's reliance on *In re Hunter S.* (2006) 142 Cal.App.4th 1497, does not help him. In *Hunter S.*, the juvenile court made no finding of detriment, and granted the parent "monitored visitation 'as can be arranged.' " (*Id.* at p. 1505.) In reality, however, no visitation was permitted despite the court's order, and although the parent "consistently raised the issue of the juvenile court's failure to enforce its visitation order for over two years" (*ibid.*), the court persistently failed or refused to enforce its order. (*Id.* at p. 1508.) Eventually reunification services were terminated, a section 366.26 was set, and the parent filed a section 388 petition seeking to vacate the section 366.26 hearing and reinstate reunification services. (*Id.* at pp. 1501, 1503, 1504.) The juvenile court held a combined hearing on the petition and section 366.26, took the matter under submission, and then issued an order denying the petition and terminating parental rights. (*Id.* at pp. 1503-1504.) The parent appealed from both orders, and the Court of Appeal concluded that the juvenile court abused its discretion in denying the section 388 petition. (*Id.* at pp. 1500, 1507.) The order denying the petition had to be reversed, and because of that the order terminating parental rights also had to be reversed.

14

(*Id.* at p. 1508.) Father's case is different. Unlike the court in *Hunter S.*, the juvenile court in Father's case made a finding of detriment, which Father did not timely challenge. Unlike the parent in *Hunter S.*, Father never sought to vacate the section 366.26 hearing. And unlike the parent in *Hunter S.*, Father did not timely challenge the denial of his section 388 petitions. Because the juvenile court in *Hunter S.* denied the section 388 petition and terminated parental rights in the same decision, on the same day, both decisions were properly before the Court of Appeal in the parent's appeal. Here, where the juvenile court denied Father's second section 388 petition on March 6 and terminated parental rights on May 8, a notice of appeal filed on May 31 did not suffice to preserve the right to challenge the denial of the section 388 petition.

C.      *Compliance with ICWA*

   1.      *Applicable Law and Standard of Review*

ICWA was "enacted in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128 (*Dezi C.*).) "ICWA gives 'Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' " and gives an Indian child's tribe the " 'right to intervene at any point' in a proceeding involving the removal of an Indian child from their family." (*Id.* at p. 1129.) "ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive

15

homes and does not prohibit states from establishing higher standards." (*Ibid.*)

"The issue of whether ICWA applies in dependency proceedings turns on whether the minor is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1129.) Under both federal and California law, an "Indian child" is one who is either (a) a member of a federally recognized Indian tribe or (b) eligible for membership in a federally recognized Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b).)

Federal law provides that "[a]t the commencement of a child custody proceeding, the court is obligated to inquire from each participant whether there is a 'reason to know' that the child is or may be an Indian child. [Citations.]" (*Dezi C., supra,* 16 Cal.5th at pp. 1129-1130, fn. omitted.) In the California Indian Child Welfare Act (Cal-ICWA, § 224 et seq.), "ICWA's state analogue" (*Dezi C.* at p. 1125), our Legislature "codifie[d] and expand[ed] on ICWA's duty of inquiry to determine whether a child is an Indian child." (*Id.* at p. 1131.) Under Cal-ICWA, "[a]gencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. [Citation.] This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.'" (*Id.* at pp. 1131-1132, citing and quoting § 224.2, subd. (a).) "[O]nce a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the

16

child, parents, legal guardian, Indian custodian, extended family members,[10] others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*Id.* at p. 1132.)

If this so-called "initial duty of inquiry" gives the juvenile court or the agency " 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required."[11] (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132.) "The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe." (*Id.* at pp. 1132-1133, citing § 224.2, subd. (e)(2)(A)-(C).) "At this stage, contact with a tribe 'shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of [ICWA] notices,' and 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (*Id.* at p. 1133, quoting § 224.2, subd. (e)(2)(C).)

---

[10] The term "extended family member" is defined by the law or custom of the Indian child's tribe, or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c)(1) [adopting federal definition].)

[11] " 'Reason to believe' means that 'the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132, fn. 8, quoting § 224.2, subd. (e)(1).)

If inquiry establishes a " 'reason to know' "—as opposed to just a " 'reason to believe' "—that the child is an Indian child, "formal ICWA notice" must be provided to the pertinent tribes. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1133.)

Rule 5.481(a)(5) requires that the agency, as petitioner in a dependency proceeding, "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes."

If the juvenile court finds that the "agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child," the court may find that ICWA does not apply to the proceedings. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134*;* § 224.2, subd. (i)(2).) Thus, a finding by the juvenile court that ICWA does not apply entails a finding that the agency complied with its duty of inquiry.

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134, quoting § 224.2, subd. (i)(2).) Our Supreme Court has noted that a "juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141.) The court's discretion depends upon the record before it: " ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes." ' " (*Ibid.*)

2.    *Analysis*

Father argues that the juvenile court's finding that ICWA did not apply to Minor is not supported by substantial evidence, primarily because there is no evidence that the Agency inquired of any paternal relatives about Minor's Indian heritage.  Therefore, he argues, the order terminating parental rights must be reversed and the matter remanded for compliance with ICWA, specifically "for proper inquiry of the available extended relatives."[12]  The Agency does not concede that it failed to adequately investigate Minor's possible Indian ancestry, but it "recognizes" that there may be information relevant to ICWA that was "not filed with the juvenile court or not included in the filed record on appeal" and does not object to conditional reversal of the termination order for the purpose of ensuring compliance with ICWA.

We have reviewed the record, and conclude that the juvenile court's implied finding that the Agency complied with its duty of inquiry is not supported by substantial evidence, given that there is nothing in the record

---

[12] In addition to raising the issue of failure to make inquiry of paternal relatives, Father asserts that the inquiries sent to the tribes, which Father characterizes as "informal notice," were "defective."  We disregard this assertion, which is not supported by any citation to authority concerning the required contents of such inquiries.  Father also asserts that the juvenile court failed to make oral inquiries on the record regarding ICWA.  We disregard this assertion, which is not supported by the record in view of Father's failing to include in the record on appeal a transcript of the March 24, 2023 detention hearing, at which both Mother and Father were present.  We presume that the court complied with section 224.2, subdivision (c), which requires the court at the commencement of such a hearing to "ask each party to the proceeding, and all other interested persons present, whether the child is, or may be, an Indian child," and requires that the inquiries and responses to occur on the record.  Further, the record suggests that the court did in fact make the required inquiry, because the Agency's jurisdiction/disposition report states that on March 24, 2023—the date of the detention hearing—Mother and Father made statements about their Indian ancestry.

to show the Agency made any inquiry of paternal relatives even though the record reflects that there may be at least four such relatives: Father's two siblings and his two adult children. Further, the Agency apparently acknowledges that it may not have fully complied with the requirement that its filings in the juvenile court include "a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes." (Rule 5.481(a)(5).)

Because we conclude that the juvenile court's implied finding that ICWA inquiry was adequate and proper is not supported by sufficient evidence and record documentation, we must conditionally reverse the juvenile court's termination of parental rights and remand the matter "to develop the record and cure the inadequacy." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1145.)

## DISPOSITION

Father's appeal from the juvenile court's denial of his section 388 petitions is dismissed as untimely. The orders issued by the juvenile court at the May 8, 2024 section 366.26 hearing are affirmed, except that the order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of rule 5.481(a)(5). If the court thereafter concludes that ICWA does not apply, then it shall immediately reinstate the order terminating parental rights. If the court concludes that ICWA applies, the court shall proceed in conformity with ICWA and related California law.

                                _____

                                Miller, J.

WE CONCUR:


_____

Stewart, P.J.


_____

Desautels, J.


A170618, *San Francisco Human Services Agency v. Richard B. / In re Rylee P.*