Filed 4/29/26  In re W.B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re W.B., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, | F090001 |
| Plaintiff and Respondent, | (Super. Ct. No. JD145421-00) |
| v. | **OPINION** |
| S.V., | |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Susan M. Gill, Judge.

S.V., in pro. per., for Defendant and Appellant.

Kendra L. Graham, County Counsel, and Kelli R. Falk, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., De Santos, J. and Harrell, J.

S.V. (mother) appeals, in propria persona, from the juvenile court's order terminating her parental rights as to her minor child W.B. (Welf. & Inst. Code,[1] § 366.26).[2] She makes several contentions, none of which relate to findings or orders made at the section 366.26 hearing.

As such, we conclude mother's claims are not properly before us and affirm the juvenile court's order terminating parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

This court is familiar with the underlying dependency case. Mother has brought challenges, mostly as a self-represented litigant, to numerous orders made in the case. (See *S.V. v. Superior Court* (Feb. 21, 2025, F088973) [nonpub. opn.] [petition for extraordinary writ from order setting § 366.26 hearing]; *In re W.B.* (Aug. 20, 2025, F088142, F088304, F088516) [nonpub. opn.] [consolidated appeal from dispositional order and other post-disposition orders]; *In re W.B.* (Nov. 21, 2025, F088736) [nonpub. opn.], review den. Feb. 18, 2026, S294328 [appeal from orders made at a *Marsden*-type hearing].)

The facts of W.B.'s dependency case are set forth in detail in the opinions issued in the prior proceedings. Here, we provide a general overview of the primary orders which led to the section 366.26 hearing; mother's prior appellate proceedings, where

_____

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] W.B.'s biological father A.S. also appealed from the order. His court-appointed appellate attorney informed this court he could find no arguable issues to raise on father's behalf. This court granted father leave to personally file a letter brief setting forth a good cause showing that an arguable issue of reversible error exists, noting that if father did not file a letter, the appeal would be dismissed. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.) Father did not file such a brief, and accordingly, this court dismissed the appeal as to him. Remittitur issued as to father only on March 9, 2026.

2.

relevant; and the basic facts of the section 366.26 hearing to place mother's present appeal and her claims in context.

***Filing of Dependency Petition Through Termination of Reunification Services***

On January 10, 2024, the Kern County Department of Human Services (department) filed a juvenile dependency petition on behalf of then three-month-old W.B. alleging he came within the juvenile court's jurisdiction under section 300, subdivision (b)(1).  The petition alleged W.B. had suffered, or there was a substantial risk he would suffer, serious physical harm or illness by mother's inability to provide regular care for him due to mental illness and substance abuse.

W.B. was detained from mother and placed with L.V., his maternal grandmother and B.R., his maternal grandfather.

At the detention hearing conducted on January 12, 2024, mother was not present and was appointed counsel.  The juvenile court found notice was proper and ordered detention of W.B. from mother to continue.  Visitation between mother and W.B. was to occur twice weekly for two hours.

On February 21, 2024, the juvenile court conducted an ex parte hearing on minor's counsel's request to limit mother's participation in medical appointments due to L.V.'s claims that mother was being disruptive during appointments.  The juvenile court granted minor's counsel's request, ordering, without prejudice, that mother was not to attend W.B.'s medical appointments, the educational and developmental decision-making rights of the parents were limited, and L.V. was appointed to make the educational and developmental decisions.

At the jurisdiction/disposition hearing conducted on March 13, 2024, mother was present and represented by counsel.  Mother objected to jurisdiction being taken over W.B. and testified on her own behalf.  After hearing the evidence and argument from the parties, the juvenile court found the allegations in the petition true and that W.B. was

3.

described by section 300, subdivision (b)(1). A.S. (father) was identified as an alleged father and ordered to provide a DNA sample for paternity testing. Mother was ordered to participate in a psychological evaluation to determine whether she would benefit from reunification services. The court renewed its order appointing L.V. to hold educational and developmental decision-making rights and ordered mother could begin attending medical appointments again but was not to cancel any. The matter was continued for disposition. Father was thereafter declared W.B.'s biological father.

The disposition hearing was conducted on May 29, 2024. Mother was present with counsel. The department initially had recommended mother be bypassed for reunification services because she had failed to participate in the psychological evaluation. Mother eventually completed the evaluation, however, and due to the results, the department changed its recommendation to mother receiving reunification services. All parties submitted on the department's updated recommendation.

The juvenile court adjudged W.B. a dependent of the court, found there was a substantial danger to him if he were to be returned to mother and that mother had made no progress toward alleviating or mitigating the causes for W.B.'s out-of-home placement, and ordered W.B. removed from mother's physical custody. Mother was ordered to participate in reunification services, including substance abuse counseling, 26 weeks of parenting and child neglect/endangerment counseling, a mental health assessment and recommended treatment including medication management, and random drug testing. Mother was advised that because W.B. was under the age of three, the reunification period may be limited to six months. The court denied father placement of W.B., finding it would be detrimental to W.B., and denied reunification services to him, finding they would not benefit W.B.[3]

---

[3]     Both parents appealed from the dispositional order. Mother was initially represented by appellate counsel, but this court subsequently granted her request to

4.

Minor's counsel subsequently filed another request for an ex parte hearing due to continuing concerns with mother's behavior at W.B.'s medical appointments. The juvenile court conducted a hearing on the request on June 27, 2024, at which both L.V. and mother testified. After hearing the evidence and argument, the court granted minor's counsel's request and again excluded mother, as well as father, from attending medical appointments.

During the reunification period, mother did not visit with W.B. nor participate in her case plan.

The six-month review hearing was conducted on November 18, 2024. Mother was present and represented by counsel. The juvenile court found (1) mother had made no progress toward alleviating or mitigating the causes for W.B.'s out-of-home placement, (2) return would create a substantial risk of detriment to him, (3) mother had not made

represent herself. Her attorney argued that the findings underlying the dispositional order were not supported by sufficient evidence and the juvenile court erred by finding inquiry was proper under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.). Father joined in both of mother's arguments raised by counsel and separately argued the court erred by summarily denying a post-disposition section 388 petition through which he requested reunification services.

Mother, in propria persona, raised several issues in a supplemental brief. This court, after reading and considering all her arguments, identified several of her claims as either improperly reliant upon evidence outside the record on appeal or supported by citations to authority that did not reasonably support her legal assertions. This court identified her cognizable claims as follows: (1) insufficient evidence supported the juvenile court's detention and jurisdictional findings and (2) she was provided ineffective assistance of counsel due to several alleged failings, mostly involving her attorney's failure to present certain evidence.

After considering the above claims on their merits, this court affirmed the juvenile court's dispositional order and the order denying father's section 388 petition. (*In re W.B.* (Aug. 20, 2025, F088142, F088304, F088516) [nonpub. opn.].)

Mother thereafter filed a petition for rehearing, which this court summarily denied.

Remittitur issued on October 20, 2025.

5.

acceptable efforts nor availed herself of the services provided to facilitate return of W.B. to her care, and (4) the department had complied with the case plan and provided reasonable services; and ordered mother's reunification services terminated. The court set a section 366.26 hearing.[4]

### Section 366.26 Reports and Hearing

Ahead of the section 366.26 hearing, the department recommended the juvenile court terminate parental rights and order adoption as W.B.'s permanent plan.

The department reported that W.B. was adoptable, as his care providers had expressed their commitment to adopting him, and he was "generally adoptable" due to his age. W.B. had been placed with his care providers since the initiation of the dependency case on January 10, 2024. He appeared "calm, happy, and easily comforted" by his care providers and had formed a parental relationship with them.

The department opined that termination of parental rights would not be detrimental to W.B. Mother had not maintained a relationship with W.B. She visited one time from the initiation of the case through the reunification period. In March 2025, she began to sporadically attend visits with father, which generally appeared to go well. As of June 2025, mother had visited with W.B. approximately seven times over the course of the entire dependency proceedings. Father visited with W.B. regularly and consistently, and the visits went well. However, the department opined adoption was nonetheless appropriate, as W.B. had never lived with father, and their relationship appeared to be

---

[4]     Mother, in propria persona, sought an extraordinary writ from the orders made at the six-month review hearing. She made numerous claims of error, including several which this court found she had no standing to bring, were untimely, and/or forfeited. This court considered her substantive claims that the department failed to provide reasonable services, the court made various procedural errors at the hearing, and her attorney provided ineffective assistance, and rejected them on their merits. (*S.V. v. Superior Court* (Feb. 21, 2025, F088973) [nonpub. opn.].)

Remittitur issued on March 24, 2025.

that of a "visiting relationship." W.B. did not demonstrate major signs of distress or difficulty during or after visits.

Father requested a contested hearing, which was conducted on June 12, 2025. Mother was present and represented by counsel. Father testified in support of his argument the beneficial parent-child relationship exception to termination of parental rights applied. Mother's attorney indicated she was making a general objection but had no other argument or evidence to present. She noted she would not be able to prove the first prong of the beneficial parent-child relationship exception that mother had regularly and consistently visited W.B., to which the juvenile court responded that it agreed. The department and minor's counsel submitted on the department's reports and recommendations.

In ruling, the juvenile court found by clear and convincing evidence that W.B. was likely to be adopted. It found father had proven he had regularly and consistently visited with W.B., but that he had failed to meet his burden to prove that W.B. had a "substantial positive emotional attachment" to father that would justify applying the beneficial parent-child relationship exception and, as such, declined to apply it.

The juvenile court ordered parental rights terminated and selected adoption as W.B.'s permanent plan.

## DISCUSSION

As a preliminary matter, we address mother's statement in her opening brief that she used "something…on [her] phone" to draft her brief. Given the context of mother's statement, and the content and style of the brief itself, we infer that mother may be referring to a generative Artificial Intelligence (AI) system. We accept that generative AI is a powerful tool, but advise that using it comes with risks, including that it could provide incorrect information and/or "hallucinated" citations. It appears to us that a substantial portion of mother's brief may be made up of direct output from an AI system.

This is concerning, first because of the risk that mother's brief contains inaccurate or misleading information that appears to have been unvetted by mother. More significant, however, is the implication that mother may have input confidential material from W.B.'s dependency case into a public generative AI system. Such a system may share entered information, which here, would include sensitive details about W.B.'s life, with the system provider and/or third parties or use it to train the AI system. We urge mother, that if she chooses to use generative AI in the future, to do so with great caution, particularly as it pertains to legal issues and the privacy of her children. (See *Using AI? Read This First* <https://appellate.courts.ca.gov/using-ai-read-first> [as of April 28, 2026], archived at: <https://perma.cc/3UN8-C9MM>.)[5]

We turn to the substance of mother's arguments. She makes the following claims: (1) "the juvenile court's section 300(b) jurisdiction and removal orders were not supported by substantial evidence of present, serious risk"; (2) "the court and department violated due process by treating mother's disputes as noncompliance and by relying on untested hearsay" as to the jurisdictional and dispositional findings and orders; (3) "the psychological evaluation issue was misused to justify a bypass posture without the required statutory foundation"; (4) "limitation of educational and developmental rights was based on disputed allegations without adequate findings"; (5) "reasonable services findings cannot stand where access, clarity, and participation were structurally impaired"; and (6) "the six-month orders and termination track were prejudicially tainted" by the cumulative effect of the alleged errors. (Some capitalization omitted.)

---

[5] We note mother has previously submitted filings to this court with citations to legal authority that did not support the claims she was making. (See *In re W.B.* (Aug. 20, 2025, F088142, F088304, F088516) [nonpub. opn.].) Though we cannot confirm if the misleading citations were the result of mother's use of generative AI, we note that providing incorrect and/or misleading information to this court in briefing, the risk of which can be increased with the use of generative AI, can impede this court's ability to efficiently address an appellant's claims.

In response, the department notified this court it would not be filing a respondent's brief because mother had raised no issues resulting from the events of section 366.26 hearing.

We agree with the department that none of mother's claims relate to the order terminating her parental rights or anything that occurred at the section 366.26 hearing and reject her claims as not properly before us because they address now final and binding orders.

A parent is barred from raising the propriety of orders antedating the termination of parental rights order made at a section 366.26 hearing. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1146.) Dependency appeals are governed by section 395, which provides in relevant part: "A judgment in a proceeding under [s]ection 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a)(1).) "A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." (*Meranda P.*, at p. 1150.)

The issues mother raises exclusively address orders made prior to the section 366.26 hearing, namely: the dispositional order, orders made at the ex parte hearings limiting her educational and developmental decision-making rights, and orders made at the six-month review hearing. Additionally, she has already raised many of the issues in prior appeals, and they have been fully litigated. We acknowledge mother continues to vehemently dispute that W.B. was properly removed from her custody. However, she has had ample opportunities before the juvenile court and this court to litigate her concerns, she has failed to establish reversible error, and the orders leading to the section 366.26 hearing are now final and binding. Because mother raises no issues with regard to the findings and orders made at the section 366.26 hearing in the present appeal, we must

9.

affirm the juvenile court's order. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 [reviewing court presumes the judgment is correct, and it is the appellant's burden to overcome the presumption and demonstrate reversible error].)

Though mother does not raise any issues regarding the order terminating her parental rights, for her benefit, we note the order appears to have been appropriate. The issues at a section 366.26 hearing are limited to whether the child is adoptable and what permanent plan should be selected for the child. If the juvenile court determines the child is adoptable, it must terminate parental rights so that the child may be adopted unless the parent can show one of the exceptions to termination of parental rights applies. (*In re Caden C.* (2021) 11 Cal.5th 614, 630-631.)

Here, as to W.B.'s adoptability, it was undisputed below, and no party has contested on appeal, that W.B. was adoptable. As to whether any exception applies, the juvenile court heard evidence from father regarding the beneficial parent-child relationship exception to termination of parental rights and declined to apply the exception. Though father filed a notice of appeal, his court-appointed attorney declined to assert this was error, and father, despite being given the opportunity declined to raise the issue on his own behalf. (See *ante*, fn. 2.) This was appropriate; a party challenging the determination would have the burden to show the evidence compelled the court to apply the exception, which the record does not support. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 ["where the issue on appeal turns on a failure of proof at trial, the question becomes whether the evidence compels a finding in favor of the appellant as matter of law."].)

No other party asserted that an exception to termination applied. Mother's attorney's determination that mother could not meet her burden to prove the beneficial parent-child relationship exception applied was appropriate, as mother had only visited with W.B. a handful of times throughout the entire dependency. (See *Caden C.*, *supra*,

11 Cal.5th at pp. 632-633, 636-637 [to justify application of beneficial parent-child relationship exception, parent must first show regular and consistent visitation and contact with the child].)

## DISPOSITION

The juvenile court's June 12, 2025 order terminating parental rights is affirmed.